Argued October 25, affirmed November 10, 1965

## STATE OF OREGON v. EVANS
407 P. 2d 621

*Gary D. Babcock,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief

was Lawrence A. Aschenbrenner, Public Defender, Salem.

*R. Thomas Gooding,* La Grande, argued the cause for respondent. On the brief were Grace K. Williams, District Attorney for Grant County, Canyon City, and Burleigh, Carey & Gooding, Deputy District Attorneys, La Grande.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, LUSK and SCHWAB, Justices.

SCHWAB, J. (Pro Tempore)

Defendant appeals from a judgment of conviction of the crime of rape entered on October 23, 1964. He assigns as error the admission into evidence of two exhibits, a shotgun with which he threatened the victim and a blanket on which the act was performed. We set forth only so much of the facts as are necessary to a consideration of the assignment of error.

On August 9, 1964, the complaining witness was driving from John Day to Bend when she was forced off the road by the defendant, who was driving a green sedan. Defendant forced the complaining witness into his car by shotgun point, then took her several miles down an old logging road where he stopped, spread the blanket upon the ground and had intercourse with her. Sometime after she was released by the defendant she reported the happenings to the state police. In the course of the investigation the state police obtained a description of the defendant and his car. It developed that a man who met this description was living at the hotel in Long Creek, Oregon. One state policeman, James E. Whalen, went to the Long Creek

hotel where he found the defendant. The pertinent portions of his testimony are as follows:

"Q  How did you come to meet him in his room?

"A  I had a description of the gentlemen residing in that room. Also, a description of the car operated by him. Both descriptions seemed to me to suggest that he might be the subject I was after.

"Q  And, did you talk with him then?

"A  Yes, I did.

"Q  And, what did you—was it later determined that you should leave the room?

"A  Yes, I asked him if he would come to the County Seat at Canyon City to talk this situation over which had been explained to him by me.

"Q  Now, before leaving for Grant—Canyon, did you look at his car?

"A  Yes.

"Q  What kind of a car was it?

"A  A light colored top and a green bottom, a '54 Olds' 4-Door.

"Q  Did you look into the car?

"A  Yes, I did.

"Q  And, what did you find?

"A  I found a blanket and a pump 16 gauge shotgun.

"Q  What did you do when you saw those articles?

"A  I seized them and deposited them in my vehicle and proceeded to Canyon City.

"Q  And, did anyone accompany you to Canyon?

"A  No one accompanied me, no.

"Q  You can see them here, State's Exhibit No. 1 and 2. Tell me what they are if you would, please?

"A  That's a 16 gauge Model 1879 Winchester pump shotgun.

"Q What's —

"A The serial number corresponds with the one in my note book, 239423.

"Q What's that other item up there?

"A This is the blanket which was also in the vehicle. It has my tag on it and the date.

"Q Officer, where were those articles located in the vehicle?

"A The shotgun was laying on the back seat with the blanket covering it.

"Q Did you examine the shotgun when you picked it up?

"A Yes, sir, I did.

"Q Did you find anything in particular?

"MR. KILPATRICK: We object to any examination of it at that time. It would be too remote to have any bearing on this case.

"THE COURT: Sustain the objection.

"MR. KILPATRICK: He had no business in the car, anyway, but we are not objecting to it.

"THE COURT: Well, he has been in there without objection, Mr. Kilpatrick, but it's too late now.

"MR. KILPATRICK: Well, at this time, your Honor, we will move to suppress the —

"THE COURT: Those items have been received in evidence, and I will take your motion up later on in chambers.

"Q (By Mr. Gooding) Prior to your taking those articles, did you discuss this with the defendant at all?

"A On the way out of the building of the hotel and somewhere around the front porch or near his car, I asked him if I could look in his vehicle. It was locked and he gave me the key."

The shotgun and the blanket had previously been received into evidence without objection by the de-

fendant after they had been identified by the complaining witness. Nothing further transpired with regard to counsel's motion to suppress until after the state had rested, when the following proceedings were had outside the presence of the jury:

"THE COURT: The first matter we are going to take up here is the motion to suppress made by Mr. Kilpatrick after Officer Whalen had testified to getting two articles, one a shotgun and the other a blanket, both of which have been introduced and received into evidence, Mr. Kilpatrick.

"MR. KILPATRICK: We waive the motion."

The defendant's position throughout the trial was that he did in fact have sexual relations with the complaining witness at the time and place described by her, but that they were voluntary. In his opening statement, defendant's counsel discussed the shotgun at some length, admitting that the defendant had possession of it on the night in question but denying that it was used to threaten the complaining witness. He stated:

"Now, it is the defendant's contention that this was a joint venture that was voluntary on everybody's part, and that for some reason afterwards, she changed her mind and claimed after two or three days of thinking it over that she was raped."

The defendant did not take the stand and offered no testimony. In the course of closing argument defendant's counsel stated:

"May it please the Court, counsel, ladies and gentlemen. In the posture of this case, it's obvious that this man isn't innocent. He has done certain things. He has escaped. He pointed a gun. He forced her off the road. There is no contradiction of that. The question here is was this forcible rape. And his Honor will instruct you as to what you are

to consider. In other words, whether you can consider other crimes, and I am sure that the instruction will be that you can only consider this crime. Not is he guilty of assault with a dangerous weapon, not is he guilty of some assault with his automobile and not is he guilty of escape, all of which is here before you, the question is, is he guilty of rape."

Defendant, in his brief, sets forth the following as the basis of his assignment of error:

"Is the admission into evidence of State's exhibits secured by police officers after defendant is arrested and during his interrogation, but prior to his being advised of his right to counsel and his right to remain silent, in the absence of evidence that defendant had independent knowledge of these rights, a violation of the defendant's right to counsel and privilege against self-incrimination under the V, VI and XIV Amendments to the Constitution of the United States, and Article I, Section 12 of the Constitution of Oregon?"

In essence, his argument is that if after arrest a suspect consents to a search of his automobile without being first advised of his right to counsel and his right against self-incrimination, the articles seized may not be used against him because to permit such would be in violation of the rule laid down in *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed2d 977.

■ We do not reach this question for the defendant was not under arrest or any other form of custody at the time officer Whalen took possession of the blanket and the gun. *Escobedo* was not intended to prevent legitimate police investigation. *State v. Shannon,* 241 Or 450, 405 P2d 837. In *State v. Neely,* 239 Or 487, 491, 395 P2d 557, 398 P2d 482, we noted that the essence of the majority's decision was:

" 'We hold, therefore, that where, as here, the

investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody,* the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the Assistance of Counsel" in violation of the Sixth Amendment to the Constitution as "made obligatory upon the States by the Fourteenth Amendment," * * *, 12 L ed2d at 986." (Emphasis supplied.)

▪ An analysis of the language above quoted shows that police may interrogate a criminal suspect without first warning him of his constitutional right except under certain conditions which are stated in the conjunctive. One of these conditions is "the suspect has been taken into police custody." *People v. Stewart,* 43 Cal Rptr 201, 400 P2d 97. In applying the rule in *Escobedo* in *State v. Neely,* supra, we said at 503-04:

"We hold that the Sixth Amendment as made obligatory by the Fourteenth Amendment requires that before law enforcement officials can interrogate a person who is the *focal suspect* of a crime, such person must effectively be informed * * *." (Emphasis supplied.)

We were there applying the rule set forth in *Escobedo* and in the context used "focal suspect" is to be interpreted to mean a person upon whom the inquiry into an unsolved crime has focused to the point where he has been taken into police custody. In the usual situation police interrogation of the nature proscribed in the absence of constitutional warnings takes place after arrest, and "arrest" includes "custody." *People*

*v. Stewart,* supra. However, "custody" as the word is used in *Escobedo* may under certain circumstances mean something less than legal arrest. See *State v. Ervin,* 241 Or 475, 406 P2d 901.

■ What we stated in *State v. Shannon,* supra, relative to "interrogation" is equally true with regard to "custody." It is probably not possible in a single case to lay down an absolute test as to what is and what is not custody, for it may well be a functional test. In any event, we need not attempt to lay down a precise definition here since, giving the word an interpretation most favorable to criminal defendants, there was no semblance of police custody in this case. Even the broadest definition of "custody" requires that there be some element of police control and consequent inhibition on freedom of movement, some circumstance, or some word or action on the part of the police that can be reasonably construed as physical or psychological restraint. Here, one policeman talked to the defendant at defendant's hotel. He explained what he was investigating; he asked the defendant as he was leaving the hotel whether or not he could look in his vehicle, and after looking in the vehicle and taking the articles in question, he left without him.

Affirmed.

McALLISTER, C. J., specially concurring.

I concur in the result of the majority opinion on the sole ground that defendant consented to a search of his automobile and at the trial did not object to the introduction of the evidence obtained therefrom. I do not agree with the dictum in the majority opinion that the police may interrogate a focal suspect without warning him of his constitutional rights so long

as the suspect has not been taken into police custody. Police interrogation to elicit incriminating statements is not involved in this case.

SLOAN, J. joins in this opinion.