**UNITED STATES of America**
**v.**
**Leo J. SCHLINSKY.**
**Crim. No. 65–2–C.**

United States District Court
D. Massachusetts.
Dec. 14, 1966.

11. 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942).

12. 353 F.2d 106, 110 (5 Cir. 1965).

13. See note 8, supra.

Gordon A. Martin Jr., Asst. U. S. Atty., for the United States.

Jerome Gotkin, Boston, Mass., for defendant.

MEMORANDUM

CAFFREY, District Judge.

This matter came before the Court upon the basis of defendant's motion to suppress certain evidence and on defendant's motion to dismiss the indictment because of allegedly prejudicial pre-indictment delay. All counsel have been previously advised both of the ruling contained herein and of the fact that the filing of this Memorandum would be delayed until after the trial to eliminate the possibility of any publicity prejudicial to the defendant, which might have resulted had the Memorandum been filed with the Order denying the motions some twelve days prior to the opening of the trial. After hearing, I find and rule as follows:

On September 11, 1961, Revenue Agent Thomas F. Murphy contacted the defendant by telephone and made an appoint-

ment to meet defendant at his drug store the following day. Murphy had been assigned by his superiors to audit defendant's federal income tax returns for the years 1958, 1959 and 1960, to determine if the taxes as reported on the returns filed were in the correct amount. They met at the drug store the following day and had a conversation as to what types of books and records were maintained by defendant. Defendant when requested granted Murphy permission to examine his books and records. Murphy was not told by his superiors that there might be fraud involved in defendant's returns and he did not advise defendant of his right to counsel or of his right to invoke the Fifth Amendment as a basis for refusing to answer questions and produce records. Nor did he advise defendant that any statements made and records produced might be used against him in subsequent court proceedings.

Over the period of the following two months Murphy saw defendant frequently. He examined defendant's records at a desk in the drug store for three or four days and then continued his examination at the nearby office of one Walter F. Warrick, a public accountant who had prepared defendant's returns. Murphy last talked to defendant on November 7, 1961, by which time he determined that an understatement had been made in returns as filed. I find that Murphy was not conducting a criminal investigation and did not make any determination as to whether or not a fraudulent or willful evasion had occurred. He followed customary Internal Revenue Service practice and referred the matter to the Intelligence Division for further investigation as to the cause of the understatement which he found.

On January 24, 1962 the case was assigned to Special Agent (now Group Supervisor) Maurice P. Kirby of the Intelligence Division. Agent Kirby, in the company of Special Agent John Manning, met defendant at the drug store on April 24, 1962, prior to which time his only other action in the case was reading Agent Murphy's report and possibly talk-

ing to Murphy by telephone. Kirby testified that it was his practice to have another agent with him whenever he visited a taxpayer on an investigation of this type, so that if an incriminating statement were made he would have a corroborating witness available, and, also, to have a corroborating witness available for his own protection in case the taxpayer later claimed that Agent Kirby had solicited a bribe or made threats to the taxpayer. Kirby has had his testimony corroborated in other cases in which he has made an investigation. He testified, and I find, that it is the policy of the Intelligence Division that a Special Agent not interview a principal unless he has a witness present.

On the occasion of this visit to the drug store, in addition to the defendant there was present Sidney Russell, an employee of defendant. I draw the inference that the store, of course, was open to any member of the public who cared to enter and do business. Upon arrival Kirby advised defendant that he did not have to produce any records or make any statement that he felt would incriminate him in any way. He also advised defendant that he and Agent Manning would leave at any time defendant told them to do so.

In this first interview defendant asked Kirby, "Where is [Agent] Murphy?" I find that on this date Kirby was unaware of Murphy's whereabouts and he did not answer the question. He did, however, inform defendant that he and Agent Manning were going to conduct a preliminary investigation of his tax liabilities. Kirby then interviewed defendant with regard to his personal history, his operation of the drug store, his checking and savings accounts, other securities, brokers, his liabilities and what records he maintained. Defendant turned certain records over to the agents who gave him a receipt for them. Kirby caused photostats to be made of defendant's cash receipts and cash disbursements journal.

On May 7, 1962, Kirby made a second visit to the drug store, at which time he requested and received unidentified additional records. No photostats were

made of these additional records. These papers were returned to and receipted for by defendant on June 21, 1962.

Agent Kirby visited the drug store a third time on February 11, 1964, bringing with him a transcript of the checks drawn on Schlinsky's personal account. They had a conversation about this subject. Defendant advised Kirby that the checks were drawn for personal reasons and that he never drew business checks on his personal account. Agent Manning's testimony was corroborative of Kirby's.

■ On the basis of the foregoing, I rule that no rights of defendant Schlinsky were violated, under the decision of the Supreme Court in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) or Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), it being clear that the defendant was at no time when interviewed at his own store in custody or otherwise deprived of his freedom in any significant way. The record establishes that he was never interviewed by the agents except in the familiar surroundings of his own store, and I rule that he acted voluntarily in all of his dealings with the agents, free from any of the compulsive factors adverted to in the *Miranda* opinion. The teaching of both *Miranda* and *Escobedo* is inapplicable to this fact situation. To the same effect, in a closely analogous fact situation, see United States v. Fiore, 258 F.Supp. 435 (D.C.W.D.Pa.1956). See, also, Kohatsu v. United States, 351 F.2d 898 (9th Cir. 1965), cert. denied 384 U.S. 1011, 86 S. Ct. 1915, 16 L.Ed.2d 1017 (1966); Irwin v. United States, 338 F.2d 770, 777 (9th Cir. 1964), cert. denied 381 U.S. 911, 85 S.Ct. 1530, 14 L.Ed.2d 433; United States v. Davis, 259 F.Supp. 496 (D. Mass., Aug. 1, 1966).

■ Defendant has failed to make any showing herein which would warrant a dismissal of the indictment on the grounds of alleged pre-indictment delay. Foley v. United States, 290 F.2d 562, 565 (8th Cir. 1961), cert. denied 368 U.S. 888,

82 S.Ct. 139, 7 L.Ed.2d 88 (1961), where the Court of Appeals for the Eighth Circuit observed, "The rule is firmly established that the protection afforded by the Sixth Amendment has no application until after a prosecution is instituted * *." To the same effect, Hoopengarner v. United States, 270 F.2d 465 (6th Cir. 1959); Iva Ikuko Toguri D'Aquino v. United States, 192 F.2d 338 (9th Cir. 1951), cert. denied 343 U.S. 935, 72 S. Ct. 772, 96 L.Ed. 1343 (1952); Harlow v. United States, 301 F.2d 361 (5th Cir. 1962), cert. denied 371 U.S. 814, 83 S. Ct. 25, 9 L.Ed.2d 56; Nickens v. United States, 116 U.S.App.D.C. 338, 323 F.2d 808 (1963), cert. denied 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178 (1964).

■ Counsel for defendant, at the opening of the hearing on the motion to dismiss and prior to the taking of any testimony, filed a document captioned "Defendant's Second Supplemental Memorandum in Support of Motion to Suppress," in which they urged that "The misconduct of the agents violated defendant's constitutional rights under the Fourth and Fifth Amendments." In the course of this document counsel asserted that Agents Kirby, Manning and Murphy were guilty of obtaining records and oral information from the defendant by stealth, by deceit, by active and passive misrepresentation, by trickery, and by lying. Suffice it to say that on the basis of the evidence adduced at the hearing on the motion to suppress, I find that these allegations of wrongdoing against the three agents are totally unsubstantiated, and that defendant's contentions in the supplemental memorandum are without factual basis or legal merit. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921), cited by defendant, is inapposite, being completely distinguishable on the facts thereof. More pertinent on its facts is the decision of the Court of Appeals for the Second Circuit in United States v. Sclafani, 265 F. 2d 408 (1959), cert. denied 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959), which upheld the denial of a motion to

suppress evidence in a tax evasion prose-cution.

While counsel for a defendant in a criminal case have an obligation to their client to be vigilant and forceful in the protection of all his constitutional rights, to the end that he be accorded a fair trial, this obligation does not extend to or furnish any basis for filing, prior to an evidentiary-type hearing, a document hurling unfounded calumnious accusations against public officials conscientiously, legally, and fairly engaged in the discharge of their official duties.

The motion to dismiss the indictment is denied.

The motion to suppress evidence is denied.