Leo J. SCHLINSKY, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6864.

United States Court of Appeals First Circuit.

Heard May 1, 1967.

Decided June 6, 1967.

Jerome Gotkin, Boston, Mass., with whom Benjamin Arac, David M. Scheffer, Stephen M. Honig and Widett & Kruger, Boston, Mass., were on brief, for appellant.

Herbert N. Goodwin, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Defendant appeals from his conviction, following a jury trial, of willful evasion of income tax for the years 1958, 1959, and 1960. 1954 I.R.C. § 7201. Defendant was the sole proprietor, and principal operator, of a drug store. His returns were prepared by an accountant named Warrick. Warrick did not audit or, with one exception, examine any of defendant's books, but simply took the figures given him by defendant and, for a charge of $55, prepared the return. The book which defendant did supply contained the receipts from defendant's regular sales, but did not contain the receipts from his "accommodation," or no-profit sales. Defendant retained a notebook, described by him as a "personal memorandum," that showed both. He destroyed this after Warrick told him that the Internal Revenue Service audit of his returns was revealing substantial discrepancies.[1]

The discrepancies were in fact substantial. It was stipulated at the trial that defendant's net taxable income for

---

1. Defendant also, on advice of counsel, purchased for $1 from Warrick certain work sheets. While the evidence is in dispute what sheets were involved, we disagree with defendant that it was error to admit testimony of the purchase.

the three years, totaling approximately $117,000, was understated by some $37,000, or more than 30%, and that savings bank interest of almost $10,000 was 50% underreported. Defendant avoided cross-examination upon what might be thought sizable inadequacies on the face of the returns by testifying that he never looked at them. His explanation, while lengthier than this, amounted to little more than that he trusted Warrick.

Defendant testified that the book supplied to Warrick contained proprietorship accounts showing how much money he was taking out of the business. He now contends that since these figures reflected his true income, an inference of good faith should be drawn. In fact, however, these accounts accurately reflected neither his income from the pharmacy nor his total income from all sources. It was pure coincidence that the total corresponded closely with what was eventually stipulated to be his true income. The jury was not required to conclude good faith from this. It is true that Warrick might have learned from these figures that defendant was extracting from the business more than it was earning, but, assuming he did so, Warrick was not retained either to investigate, or to evaluate, defendant's business judgment. If the jury disbelieved defendant's statement that he never looked at his returns, as well it might, but credited his testimony that he attached "biblical" importance to the proprietorship figures, it could conclude that rather than trusting Warrick's results to be accurate defendant was well aware that they were not.

■ Before trial defendant filed what district judges are now finding almost inevitable, a motion to dismiss and a motion to suppress. The former, based on a delay in the return of the indictment, asserted a denial of his Sixth Amendment right to a speedy trial. The investigation began in the late summer of 1961, and the indictment was returned in January 1965. The defendant was interviewed by IRS personnel in April

and May of 1962. In May his attorney registered his appearance with the IRS. In February 1964 defendant was interviewed again, and in March the Service formally advised him of the possibility of criminal proceedings. Defendant does not complain of the ten months delay after March 1964 because during that period his counsel were seeking to head off any indictment. Nor does he make any showing that any delay prior to March caused his actual prejudice, or was improperly motivated. Cf. United States v. Ewell, 1966, 383 U.S. 116, 122–123, 86 S.Ct. 773, 15 L.Ed.2d 627. We do not agree with the defendant that the burden was on the government to "explain."

■ It has generally been held that the right to a speedy trial does not attach prior to indictment. E. g., Nickens v. United States, 1963, 116 U.S.App.D.C. 338, 323 F.2d 808, cert. den. 379 U.S. 905, 85 S.Ct. 198, 13 L.Ed.2d 178; Foley v. United States, 8 Cir., 1961, 290 F.2d 562, cert. den. 368 U.S. 888, 82 S.Ct. 139, 7 L.Ed.2d 88; Hoopengarner v. United States, 6 Cir., 1959, 270 F.2d 465. As the Supreme Court has stated in a somewhat different context, "There is no constitutional right to be arrested." Hoffa v. United States, 1966, 385 U.S. 293, 310, 87 S.Ct. 408, 417, 17 L.Ed.2d 374. While we are not prepared to hold categorically that the statute of limitations is the only control on the length of time permissible between the conclusion of the government's investigation of a crime and the bringing of an indictment, cf. Ross v. United States, 1965, 121 U.S.App.D.C. 233, 349 F.2d 210, we do hold that a claim of unconstitutional preindictment delay must be supported by something much more than appears in the present case.

■ The motion to suppress was directed to records that the defendant had supplied to IRS agents and other evidence obtained as "fruit" of examination of those records. This motion was properly denied. The court found that in the initial civil audit no warnings were given to the defendant. However, when

the possibility of criminal liability appeared, the case was turned over to a Special Agent who, at his first meeting with the defendant, advised him that he need not answer any questions, that he need not produce any records that might incriminate him, and that he could terminate the interview at any time.[2] All interviews were conducted on defendant's premises. It is not contended that there was any physical restraint, threats or promises.

The relation between a taxpayer's obligation to supply information to taxing authorities and his Fifth Amendment privilege is a complex and unsettled one. Every person is required to maintain records of all financial dealings that bear on his tax liability, 1954 I.R.C. § 6001 and Treas.Reg. 1–6001–1(a), and under some circumstances he may be required to produce them. 1954 I.R.C. § 7602. To what extent the "required records doctrine" of Shapiro v. United States, 1948, 335 U.S. 1, 68 S.Ct. 1375, 92 L.Ed. 1787, which denies the privilege to records that the law properly requires certain classes of persons to keep, is applicable to tax records is uncertain. See generally Meltzer, The Privilege Against Self-Incrimination and Required Income Tax Records, 30 Taxes 45 (1952). We may assume for present purposes, however, that personal records, even though discoverable for civil purposes, may be withheld by a defendant in a criminal case. See Scanlon v. United States, 1 Cir., 1955, 223 F.2d 382; cf. United States v. Blue, 1966, 384 U.S. 251, 86 S.Ct. 1416, 16 L.Ed.2d 510. The court's finding, however, that defendant's actions were voluntary in fact was manifestly correct. It is apparent that defendant produced what he wanted, and retained what he wanted. The motions were properly denied. D.C., 261 F.Supp. 265.

At the trial the defendant unsuccessfully sought a lengthy voir dire of prospective jurors. The court's limitation was within its discretion. Principally what was excluded were questions purportedly designed to discover whether the juror would accept various instructions of law favorable to the defendant that might be expected to be in the charge. We have long viewed with disfavor the practice prevailing in certain jurisdictions under which a party, ostensibly engaged in exploring the jury's qualifications, is in fact exercising hopefully sophisticated advocacy upon jurors whom it has no real intention of challenging. See Strickland v. Perry, 5 Cir., 1957, 244 F.2d 24, cert. den. 355 U.S. 847, 78 S.Ct. 72, 2 L.Ed.2d 56, disapproving. This not only corrupts the purpose of the voir dire, but places undue emphasis upon those points the party so chooses to make.

With respect to the other inquiries which the court precluded, in our opinion the purpose of the voir dire is to ascertain disqualifications, not to afford individual analysis in depth to permit a party to choose a jury that fits into some mold that he believes appropriate for his case. Even if a party has some special matter in mind, a broad discretion as to its appropriateness must be reposed in the district court. Stephan v. Marlin Firearms Co., 2 Cir., 1965, 353 F.2d 819, cert. den. 384 U.S. 959, 86 S.Ct. 1584, 16 L.Ed.2d 672; United States v. Mackey, 7 Cir., 1965, 345 F.2d 499, cert. den. 382 U.S. 824, 86 S.Ct. 54, 15 L.Ed.2d 69; Sellers v. United States, 1960, 106 U.S. App.D.C. 209, 271 F.2d 475.

Next, we find entirely without merit defendant's extensive argument that the evidence did not warrant conviction. Even if, which we in no way grant, all of the damaging testimony for which the witness Warrick is criticized were to be disregarded, there was ample evidence to support a conviction. We recognize that counsel are, and should be, zealous advocates, and that guilty as well as innocent defendants are entitled to full representation. We have said be-

---

2. Nothing was said about a right to counsel. There was no requirement that this be done. Morgan v. United States, 1 Cir., 5/16/67, 377 F.2d 507; Selinger v. Bigler, 9 Cir., 4/27/67, 377 F.2d 542.

fore, however, Stack v. United States, 1 Cir., 1966, 368 F.2d 788, 790, cf. White v. Hancock, 1 Cir., 1966, 355 F.2d 262, 263 n. 2, and we repeat, that full representation does not include the making of points which are clearly frivolous. Cf. Anders v. State of California, 5/8/67, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493. We so regard this one. Even today, defendant has been unable to suggest a reason, other than that he never studied bookkeeping, why a man capable of running his own business for twenty-two years, a business grossing well over $100,000 annually by the time in question, could think that he should not account either in gross receipts or elsewhere, for the proceeds of substantial sales just because they were made at cost. Other matters, independently causing us to believe defendant's motion for acquittal frivolous, we will not pause to discuss.

Only a few of defendant's evidentiary complaints require consideration. Warrick testified that defendant gave him, each year, his total savings bank interest. Defendant testified that he gave Warrick the amounts he had on deposit, and the rates of interest each bank paid, and that Warrick calculated the interest. Why defendant should adopt so complicated a procedure, let alone how he could innocently have given figures causing a 50% understatement, was never explained. Nonetheless, we will assume that defendant was entitled to prove his version to the limit.

■ In 1962, because of his tax difficulties, defendant employed an accountant, one Myers. Myers conferred with Warrick, following which an affidavit was prepared, apparently by Myers, which he asked Warrick to sign. Warrick refused. Defendant made three unsuccessful attempts to introduce this paper in evidence. The court was clearly correct as to two. There is a considerable burden to show adoption of a statement or document prepared by someone else. The mere assertion of one reason or excuse for not signing is not to be equated with waiver, or taken as an acknowledgement that there was no other reason. Warrick's saying that he wanted to consult counsel, and, on another occasion, referring to one specific error, was not to be construed as even partial adoption. Finally, whether or not Myer's proposed testimony showed a more specific adoption, cf. Asaro v. Parisi, 1 Cir., 1962, 297 F.2d 859, it was not prejudicial error to exclude it. Myers had already testified that Warrick told him everything that was in the affidavit. For Myers to say that Warrick thereafter confirmed it would have added nothing of substance.

■ With respect to the nonexistence of Form 1099 on which savings banks are now required to report interest, 26 U.S.C. § 6049(c) (1962), conceivably it might have been better under the circumstances of this case if the court had reminded the jury that in the years in question this form had not been devised. However, we find no error. Defendant's backing and filling never succeeded in articulating exactly what he wanted to prove with respect to Form 1099, or what he expected this proof to demonstrate. At least most of the time he substantially overstated its legal consequences and relevancy, which quite apparently caused the court to conclude that the slight possible relevancy was more than overshadowed by the confusion it might cause the jury.

■ The defendant makes a number of complaints about the charge, none of which we sustain. The court instructed the jury that accident or carelessness was not willful intent. Defendant requested that the court add "gross" carelessness. While to have done so would not have been error, see Gaunt v. United States, 1 Cir., 1950, 184 F.2d 284, cert. den. 340 U.S. 917, 71 S.Ct. 350, 95 L.Ed. 662, the court might properly feel (as it said it did) that it would then have to define gross carelessness. It would not be improper for a court to suggest that, if carelessness appeared sufficiently gross, there might come a time when the jury might ask itself if the defendant was truly careless, or something worse.

We hold that it was not error for the court to simplify the matter, as it did, *in limine.*

■ It is true that in another connection there was one sentence in the charge, which the court apparently took out of a compendium of nationally published charges, and which, standing alone, was possibly misleading.[3] However, there were other statements which were full and correct. The defendant did not call the court's attention to the possible inconsistency. This is the classic situation where a defendant cannot invoke the "plain error" rule. E. g., Conley v. United States, 6 Cir., 1958, 257 F.2d 141; cf. Dichner v. United States, 1 Cir., 1965, 348 F.2d 167.

■ There is one matter on which we do agree with the defendant. The witness Murphy, the original IRS agent, gave very damaging evidence against the defendant. The defendant called for his grand jury testimony for use in cross-examination. Without hearing argument, the court refused. Under certain earlier cases decided by this court and others, this ruling was proper. Under Dennis v. United States, 1966, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973, we believe it was not. In the light of that opinion the requirement of "particularized need" is very easily met. Here, as in *Dennis,* it was for cross-examination.[4]

However, the government now informs us, by brief, that the "long established policy of the United States Attorney's Office, District of Massachusetts, [is] not to record the Grand Jury testimony of Government employees."[5] The defendant's contention that this is an unconstitutional practice in the light of *Dennis* is without merit. McCaffrey v. United States, 10 Cir., 1967, 372 F.2d 482. Whether, under our supervisory power, cf. Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479, we should now, in the light of *Dennis,* condemn it for the future, is not presented, and in view of the lack of argument on the subject we will not decide it. Possibly the United States Attorney will voluntarily reconsider this practice, if it be his practice.

■ We added the last five words, and we remand the case, for precisely the same reason. We do not accept statements in briefs as evidence. If the district court finds, after hearing, that the grand jury testimony of Murphy was not taken, the judgments will be affirmed. If the testimony was taken, defendant will be entitled to a new trial unless there appears no slightest inconsistency between Murphy's grand jury testimony and his testimony at the trial.[6]

The case is remanded to the district court for further proceedings consistent herewith.

---

3. We have more than once had occasion to regret the publication of charges that exceed routine "boiler-plate" because of just this danger.

4. But cf. Walsh v. United States, 1 Cir., 1967, 371 F.2d 436, to which we adhere.

5. The government, after argument, reduced this to mean "Government investigative agents," because such individuals file "reports." The government added that these reports "are available to the defendant under the Jencks Act."

We note this for what little it is worth, at the same time observing that the government disclaimed at the trial having any such report from Murphy.

6. We recognize that this ruling falls somewhat short of certain statements in Dennis. See 384 U.S. at 873–875, 86 S.Ct. 1840. However, Murphy was extensively cross-examined, and at this stage of the case we would find no prejudicial error if his grand jury testimony suggested no inconsistency whatever.