Sarkis N. **CHAKEJIAN**

v.

James F. **TROUT**, Special Agent Intelligence Division, Internal Revenue Service, United States Treasury Dept.

**Sheldon Cohen, Commissioner Internal Revenue**
**United States of America**
and
**Girard Trust Bank.**
**Civ. A. No. 43170.**

United States District Court
E. D. Pennsylvania.
Jan. 6, 1969.

As Amended Jan. 17, 1969.

Robert M. Taylor, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., E. D. Pa., Philadelphia, Pa., and James H. Jeffries, III, U. S. Dept. of Justice, Washington, D. C., for James Trout and Sheldon Cohen.

R. Neal Risley, of Dechert, Price & Rhoads, Philadelphia, Pa., for the Girard Trust Bank.

OPINION

HIGGINBOTHAM, District Judge.

This is a civil suit against a Special Agent of the Internal Revenue Service, the Commissioner of Internal Revenue and a bank. In this action the plaintiff seeks to enjoin compliance with or enforcement of a summons issued by Special Agent Trout to the Girard Trust Bank, and to quash and dismiss it; to

suppress evidence allegedly obtained in violation of the plaintiff's constitutional right against self-incrimination; to compel the return of evidence and property allegedly illegally seized from the plaintiff, as the fruits of the unlawful interrogation; and to enjoin the defendants from using the evidence or presenting it to a grand jury.

The plaintiff's primary contention is that since an IRS special agent's sole function is to investigate the possible criminal liability of a taxpayer, when questioning the taxpayer the agent should be required to inform him of his constitutional right against self-incrimination and of his right to have a lawyer present during the interview; but that Trout, by misrepresenting the purpose of his visit and failing to give the required warnings, obtained tax information from the plaintiff, duplicated his financial records and obtained other information leading him to issue and serve a summons upon the defendant, Girard Trust Bank, demanding certain business records of the bank relevant to the possible income tax liabilities of the plaintiff, all in violation of the plaintiff's Fifth Amendment right against self-incrimination.

Counsel for the Internal Revenue Service and Agent Trout have moved to dismiss the complaint on the following grounds: (1) that this court is without jurisdiction to enjoin compliance with or enforcement of an Internal Revenue summons; (2) that this action is, in reality, a suit against the United States to which it has not consented; (3) that the court may not suppress evidence prior to indictment, nor enjoin its use or presentation to a grand jury; and (4) that a special agent in a non-custodial situation is not required to give the "Miranda warnings" to a taxpayer before he is questioned as to potential criminal tax liabilities.

An argument and an evidentiary hearing were held on the defendants' motion to dismiss. After giving careful consideration to the pleadings and evidence, to the briefs submitted by the parties and the oral arguments of counsel, the court now makes the following Findings of Fact and Conclusions of Law.

### I. *Findings of Fact*

The plaintiff, Sarkis Chakejian, together with his son, Richard Chakejian, operates a cleaning establishment in Bala Cynwyd. On April 11, 1967, Special Agent Trout, accompanied by Special Agent Deubler, visited the Chakejian business establishment and requested an interview with Richard Chakejian concerning his income tax returns for the years 1962–64. (N.T. 6–7, 50–51) The agents introduced themselves, showed their credentials and informed Richard Chakejian that he could have a lawyer present, if he wanted one. (N.T. 6, 51) Richard replied that he did not feel that it was necessary because he didn't have anything to hide. (N.T. 6) The interview lasted for approximately two hours, then the agents left. (N.T. 7)

Agent Trout returned for a second visit April 25, 1967, accompanied by another special agent (Gindhart). Richard Chakejian was again informed that he could have a lawyer present and he replied, "I have done nothing wrong. I don't think it is necessary, is it." (N.T. 8) Richard showed the agents his cancelled checks for the years in question at their request, and they were duplicated on a microcopying machine by Agent Gindhart during the interview. After the interview the agents accompanied Richard to his home to see whether he had any additional cancelled checks there, then to the Girard Trust Bank to examine the contents of his safe deposit box. (N.T. 9)

The agents returned to the Chakejian business establishment for a third visit on May 9, 1967. This time they asked to see both Richard and Sarkis Chakejian. The agents gave Sarkis Chakejian the same warning they had previously given Richard—i. e., that he could have a lawyer present if he wanted one. Sarkis Chakejian replied, "Where could I get a lawyer now if I wanted one."

(N.T. 10, 30, 33) Both Chakejians were adamant, and I so find, that Agent Trout did not inform them that they were not required to make any statements that they felt might incriminate themselves.[1] (N.T. 20, 21, 40, 41, 79, 82) Agent Trout then proceeded to question Sarkis Chakejian about his income tax returns for the years 1964–66. Mr. Chakejian answered freely and also made available for photocopying certain personal documents, business records, etc. (N.T. 11, 33, 37, 61) Toward the end of the interview Special Agent Trout stated words to the effect: "You are aware that this is a criminal investigation Mr. Chakejian?" This was the first point at which the Chakejians realized that the agents were present on more than a routine tax investigation. (N.T. 11–12, 34)

The agents retained no cancelled checks, personal documents or other property of the plaintiff; merely the copies which they made of the documents. (N.T. 49, 50)

On June 29, 1967, Agent Trout served upon the Girard Trust Bank an Internal Revenue summons requesting that an officer of the bank appear at his office on July 17, 1967, bringing with him certain bank records pertaining to all financial transactions by the Chakejian family (including in-laws), for the years 1962–66. On July 10, 1967, the bank notified Chakejian of its receipt of the summons and its intent to comply unless Chakejian, through his attorney, obtained a court order enjoining the production of the records, prior to the required date of compliance. By agreement between the bank and the Internal Revenue Service, the time for compliance with the summons was deferred until July 20, 1967; and on July 19, 1967, the plaintiff filed his complaint seeking to quash the summons and to obtain the other relief set forth in the opening paragraph of this opinion. (Complaint, amplified by affidavits and appendices attached thereto.)

## II. Discussion

On the facts as stated above, and drawing inferences most favorable to the plaintiff, I conclude that the plaintiff is not entitled to the relief which he seeks, and that the complaint should be dismissed for lack of equity jurisdiction in this court.

█ On the threshold issue of the challenge by counsel for defendants Trout and the Commissioner of Internal Revenue, Sheldon Cohen, to the jurisdiction of this court to consider the complaint on the ground that it is a disguised suit against the United States to which it has not consented; such a contention was made, and disposed of by the Court of Appeals for the District of Columbia in a case remarkably similar in its facts to the present case, wherein the court noted:

"There are some gasps of vitality left in this fading doctrine of sovereign immunity—notably in cases involving Government property. * * But it is lifeless when offered as a defense barring examination of a plea that action threatened by an executive official transcends constitutional limitations. It is the American doctrine that a suit against an official threatening to act unconstitutionally stands in theory as a suit against him personally and individually even though the action he takes or threatens is of the kind which only a government official can take. His action is deemed the action of the Government in form, but not in substance. * * * This

1. Agent Trout initially was equally adamant that he did warn both Chakejians on each visit that they were not required to make any statements which they felt would tend to incriminate themselves and could terminate the interviews at any time. But, upon further questioning by the Court, Agent Trout conceded that he did not inform Richard Chakejian that he did not have to make any statements he felt might tend to incriminate himself. (N.T. 58) However he then reiterated on later examination by his counsel that he did give the warning about self-incrimination to Sarkis Chakejian. (N.T. 60–61) But I resolve the conflict in credibility in favor of the plaintiff and his son.

approach sustaining jurisdiction * * is available not only in the familiar situation of threatened enforcement of an unconstitutional statute, but also where an individual action is challenged on constitutional grounds. Joint Anti-Facist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951).[2]

I consider the judgment of that court dispositive of the defendants' contention in this case.

With respect to that part of the plaintiff's complaint which seeks to quash or otherwise enjoin enforcement of the summons issued by Special Agent Trout to the Girard Trust Bank, the Supreme Court has held that such an action will not lie. In Reisman v. Caplin, 375 U.S. 440, 84 S.Ct. 508, 11 L.Ed.2d 459 (1964), the plaintiffs, attorneys for a taxpayer, sought injunctive and declaratory relief against the Commissioner of Internal Revenue, and an accounting firm which the attorneys had retained to work on the financial records of their clients in preparation for certain civil and criminal tax proceedings arising from alleged tax liabilities of the clients. The contentions of the plaintiffs were that enforced production of the records and documents in question (including original records and papers of the taxpayers) would be an unlawful appropriation of the plaintiffs' work product and trial preparation as well as an unreasonable seizure requiring the taxpayers to incriminate themselves and depriving themselves of the effective assistance of counsel. The Court affirmed a District Court dismissal of the complaint, but found it unnecessary to reach the issues decided by the courts below, holding instead that the plaintiffs had an adequate

remedy at law. The Court, after discussing the Commissioner's summons power and the enforcement machinery which complements it, found that the comprehensive procedures of the Internal Revenue Code provide full opportunity for a taxpayer or interested third party to achieve judicial review of his grievances without the necessity of seeking injunctive relief. According to the Court, in a situation where, as here, the summoned party has indicated his intent voluntarily to comply with the summons, the aggrieved taxpayer's proper way of proceeding would be to "restrain" the witness from complying, thereby forcing the Commissioner to seek to compel compliance by bringing an action in a court of competent jurisdiction, as provided by the Code.[3] In such a proceeding the taxpayer or other interested party could intervene to assert his claims.

In this case the plaintiff has also sought to enjoin the Girard Trust Bank from complying with the summons. And though it is problemmatical whether this is the "restraint" suggested by Reisman v. Caplin;[4] since an evidentiary hearing has been held on the defendants' Motion to Dismiss, no cause, other than that of further delay, would be served by remitting the parties to another judicial proceeding. Therefore, this court has considered the allegations by the plaintiff in support of his motion to enjoin compliance with the summons issued to the bank, and finds them inadequate.

However, in so holding, the court rejects the defendants' contention that a taxpayer-plaintiff has no standing to intervene and object to an Internal Revenue summons issued to a third

---

2. Smith v. Katzenbach, 122 U.S.App.D.C. 113, 351 F.2d 810 (1965).

3. 26 U.S.C.A. § 7604(a) & (b).

4. By its use of the term "restrain", the Supreme Court apparently meant non-judicial action by the taxpayer to inhibit the third party's compliance with the subpoena, rather than by an injunction; otherwise the possibility could exist that

one court might be asked to overrule or dissolve an injunction issued by a court of coordinate jurisdiction. On the other hand, as a practical matter both actions would probably be consolidated in a single court. And, in some instances an injunction might be the only effective means of restraining a third party which indicated an intent to comply with a summons, irrespective of the taxpayer's exhortations.

party when only the books, records and other documents belonging to the third party are the subject of the summons. Though several courts have construed *Reisman v. Caplin* in a manner which supports the defendants' argument, [5] this court (and apparently the U. S. Supreme Court) finds more persuasive, and more faithful to the holding of *Reisman*, the opinion in the recent case of *Justice v. United States,* 365 F.2d 312 (6th Cir., 1966), affirmed 390 U.S. 199, 88 S.Ct. 901, 19 L.Ed.2d 1038 (1968), which relying on *Reisman,* held that a taxpayer must be allowed to intervene to interpose his objections to a summons issued to a third party by the IRS in a situation where, were he not allowed to intervene, his interests might not be adequately protected by the existing parties; he would not be an aggrieved party, entitled to appeal; and might therefore be bound by a judgment in the action. The Court finds those conditions present in this case since the bank has no interest in the outcome of the proceedings and has indicated its intent to voluntarily comply with the subpoena unless restrained by a court of competent jurisdiction, and therefore considers *Reisman v. Caplin,* as amplified by *Justice v. United States,* controlling.

■ Nonetheless, after a full evidentiary hearing, on the facts as found above, the court finds that the evidence adduced at the hearing failed to prove that the information which provided the basis for the summons issued to the Girard Trust Bank by Special Agent Trout was obtained solely as a result of the plaintiff's allegedly unlawful interrogation;[6] or, that the plaintiff would suffer irreparable harm were the bank compelled to comply with the summons by producing the requested documents at the hearing. In addition, and for reasons explained more fully below, the court considers the plaintiff's prayer for injunctive relief to be premature, and an inappropriate means of seeking redress of the alleged violations of his constitutional rights.

■ The plaintiff's remaining claim seeks to suppress evidence allegedly illegally obtained by the IRS in violation of the plaintiff's constitutional right against self-incrimination, due to Special Agent Trout's failure to give him the warnings established by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1965); and to enjoin its presentation to a grand jury. Initially it can be noted that every appellate court which has considered the issue has held that the full *Miranda* warnings are not required in the non-custodial interview of a taxpayer by revenue or special agents of the IRS.[7] But, I do not find it necessary to reach the merits of this issue. The above-cited cases, which held contra to the plaintiff's contention, all involved appeals from criminal convictions at trials in which the allegedly self-incriminating testimony was admitted over the defendants' objections. Here, the plaintiff is seeking a pre-indictment suppression of evidence. But, the court finds that he

---

5. In re Cole, 342 F.2d 5 (2d Cir., 1965), cert. denied 381 U.S. 950, 85 S.Ct. 1803, 14 L.Ed.2d 723 (1965); Stone v. Williams, 356 F.2d 934 (1st Cir., 1966); Schulze v. Rayunec, 350 F.2d 666 (7th Cir., 1965), cert. denied, 382 U.S. 919, 86 S.Ct. 293, 15 L.Ed.2d 234 (1965).

6. At the deposition of Special Agent Trout taken on June 13, 1968, Counsel for the plaintiff sought to elicit information as to whether information received from an informer provided any basis for issuance of the summons to the Bank. On advice of counsel, Trout declined to answer (Dep.P. 34, 35) relying on the "informer's

privilege"; cf. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). At the hearing on August 1, 1968, the Court upheld the defendant's objection.

7. United States v. Squeri, 398 F.2d 785 (2d Cir., 1968); Spinney v. United States, 385 F.2d 908 (1st Cir., 1967), cert. denied 390 U.S. 921, 88 S.Ct. 854, 19 L.Ed.2d 981 (1968); Schlinsky v. United States, 379 F.2d 735 (1st Cir., 1967), cert. denied 389 U.S. 920, 88 S.Ct. 236, 19 L.Ed.2d 265 (1967); Selinger v. Bigler, 377 F.2d 542 (9th Cir., 1967).

is not entitled to this injunctive relief since he has an adequate remedy at law. The plaintiff may seek to suppress any evidence which he feels was illegally obtained, by appropriate motions and objections if and when he is brought to trial. As the United States Supreme Court recently noted, in deciding a related procedural issue in a tax evasion case:

> "Even if we assume that the Government did acquire incriminating evidence in violation of the Fifth Amendment, Blue would at most be entitled to suppress the evidence and its fruits if they were sought to be used against him at trial. * * * Our numerous precedents ordering the exclusion of such illegally obtained evidence assume implicitly that the remedy does not extend to barring the prosecution altogether. *So drastic a step might advance marginally some of the ends served by exclusionary rules, but it would also increase to an intolerable degree interference with the public interest in having the guilty brought to book.*" (Emphasis added).

United States v. Blue, 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966). Recognizing the validity of the concerns articulated by the Court in *Blue,* supra, I consider the plaintiff's complaint to be premature.

### III. *Conclusions of Law*

1.) This court properly has jurisdiction of this action.

2.) The plaintiff has no standing to seek to quash an Internal Revenue Summons issued to a third party.

3.) The plaintiff has failed to prove that irreparable harm would result from allowing the Girard Bank to comply with the summons served upon it by Special Agent Trout.

4.) The plaintiff has an adequate remedy at law, hence is not entitled to the injunctive relief of pre-indictment suppression of evidence allegedly obtained in violation of his constitutional rights.

5.) The defendants are entitled to entry of judgment in their favor.

### ORDER

And now, this 6th day of January, 1969, it is hereby ordered that the Complaint of Sarkis N. Chakejian against Special Agent James F. Trout, Sheldon Cohen, Commissioner of Internal Revenue, and the Girard Trust Bank be, and the same hereby is, dismissed, as against each defendant.