Argued July 26, affirmed August 10, petition for rehearing
denied September 6, petition for review
denied September 26, 1972

STATE OF OREGON, *Respondent, v.* HASKELL
LEROY CROSSEN (No. 20295), *Appellant.*

499 P2d 1357

*J. Marvin Kuhn,* Deputy Public Defender, Salem,
argued the cause for appellant. With him on the
brief was Gary D. Babcock, Public Defender, Salem.

*John L. Snyder,* District Attorney, Dallas, argued
the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

Upon trial by jury, defendant was convicted on two counts of negligent homicide and one count of failing to remain at the scene of an accident. On appeal he contends that his statements to the police should not have been admitted into evidence, because defendant was not advised of his rights as required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), before making the statements in question.

The charges against defendant arose out of an automobile accident which was investigated by three police officers. Upon arriving at the scene of the accident, the officers determined that two cars had collided, one of them a Ford and the other a Rambler. They also determined that two persons who had been occupants of the Rambler had been killed in the accident.

The occupants of the Ford were unable to tell the police who had been driving the Rambler. However, a witness told one of the officers that a person other than the two victims had been in the Rambler when the cars collided. A records check revealed that the owner of the Rambler was the defendant, who lived less than two miles from the scene of the accident.

One of the officers, a county deputy sheriff, then went to defendant's home, arriving there about an hour after the accident occurred. The deputy sheriff asked defendant if he knew where his car was. The defendant indicated that he did not. The deputy

noticed that the defendant had an arm injury, and said to the defendant, "You got the injury in the accident, didn't you?" The defendant admitted he had. The deputy then requested the defendant to return to the accident scene and the defendant did so.

At the scene, in the course of questioning by a state policeman, the defendant told a story inconsistent with his having been in the car at the time of the accident. As these conversations were going on, the officers kept studying the scene and came to the conclusion that it was not likely that either of the dead men had been driving the Rambler. They also came to the conclusion that the defendant was intoxicated and they then placed him under arrest on a charge of driving while under the influence. At this time the police gave the defendant *Miranda* advice. None of them had done so previously.

Only the three policemen testified at the *in camera* hearing on the admissibility of defendant's statements. They testified that up until the time the defendant was placed under arrest he was not in custody, was free to go at any time, and that generally, until the time he was arrested, they were investigating the accident to determine if a crime had been committed. The defendant offered no evidence at the *in camera* hearing or at trial. The record supports the trial judge's finding that at the time the defendant made the statements in question he was not in custody, and that, therefore, at that time *Miranda* advice was not constitutionally required.

We base our conclusion on a line of Oregon Supreme Court cases, commencing with *State v. Evans,* 241 Or 567, 573, 407 P2d 621 (1965). The opinion which well articulates the majority view of the Oregon Su-

preme Court is *State v. Travis,* 250 Or 213, 441 P2d 597 (1968), pertinent portions of which we restate:

"The complaining witness had reported to the police that the defendant, with whom she was acquainted, had broken into her house at night while her husband was away and that she had awakened to find the defendant on her bed. A police officer called at the defendant's home for the purpose of checking on the complaint. The defendant and his wife were both at home, and the defendant invited the officer inside. The officer declined the invitation, suggesting instead that it might be better if they talked in the officer's car.

"After the officer and the defendant were seated in the police car, the officer said, 'this is a criminal matter,' and advised the defendant 'that he had an absolute right to an attorney before making a statement.' The officer did not, however, advise the defendant of his right to counsel at public expense and of his absolute right to remain silent if he wished to do so. Accordingly, the advice fell short of the advice required under our decisions in cases of custodial interrogation. See *State v. Edwards,* 244 Or 317, 417 P2d 766 (1966); *State v. Keller,* 240 Or 442, 402 P2d 521 (1965).

"When the officer told the defendant about the woman's complaint, the defendant promptly admitted his presence in her home. The officer then told the defendant that the police would 'contact him later' if a warrant should be issued for his arrest. The officer took his leave and the defendant returned to his house. The next day, the defendant was arrested and charged with burglary.

"On the foregoing facts, the trial court found that the defendant had not been under arrest or 'otherwise deprived of his freedom of action in any significant way,' within the meaning of *Miranda v. Arizona,* 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966). Defendant's statements to the officer were received in evidence.

"Prior to the *Miranda* decision, this court had permitted the police to testify to conversations with focal suspects who had been questioned while not under arrest even though the officers had not first advised them of their rights. See *State v. Evans,* 241 Or 567, 573, 407 P2d 621 (1965). Since the trial court deemed *State v. Evans* controlling, this appeal seeks to have that decision overruled.

"This court was not unanimous in the *Evans* case, and the defendant now argues that the *Miranda* case has made the *Evans* case obsolete even if *Evans* correctly stated Oregon law at the time it was published.

"The defendant argues that the exclusionary rule now must be applied whenever a focal suspect is interviewed or interrogated without being advised of his rights. He would have us exclude the evidence regardless of the degree of police control or custody being exercised over the suspect at the time of the interview. By focal suspect, the defendant presumably means one whom the police have probable cause to arrest; this is the meaning we give to the term.

"Though the facts of the *Miranda* case involved police-station interrogation, the reasoning in that decision applies to custodial questioning outside the police station. It is clear that the police may not avoid the *Miranda* rules by questioning an arrested suspect on the way to the police station or in the field. See *State v. Keller,* 240 Or at 448. And see Graham, *What is 'Custodial Interrogation?': California's Anticipatory Application of Miranda v. Arizona,* 14 UCLA L Rev 59, 83 (1966). It is not always clear, however, at what point field questioning of a suspect becomes custodial interrogation. See, e.g., *State v. Taylor,* 249 Or 268, 437 P2d 853 (1968).

"The badge of a police officer representing government authority, in and of itself, may have a subtly coercive effect. But we cannot believe that

any psychological pressure emanating from an officer's authority is likely to cause an innocent person, who knows that he is free to come and go, to confess a crime he did not commit. Nor is a question by an officer likely to produce involuntary self-incrimination on the part of a guilty person if that person is not under arrest or under any other form of restraint.

"The basis of the exclusionary rule is the Fifth Amendment guarantee against compulsion. The *Miranda* case held that police custody is 'inherently coercive.' If, in fact, there is no custody, there is no danger that a coercive environment will be created. There is no need, therefore, to indulge in a fictitious assumption that we are preventing coercion when we exclude otherwise admissible evidence.

"Some post-*Miranda* cases have held that field interrogation of suspects requires all the *Miranda* warnings if police have probable cause to believe the suspect is guilty. See, e.g., *People v. Terrell,* 53 Misc2d 32, 277 NYS2d 926, 939 (Sup Ct 1967); *Commonwealth v. Jefferson,* 423 Pa 541, 226 A2d 765 (1967). On the other hand, the New York Court of Appeals has held that answers produced by field interrogation of a focal suspect without the *Miranda* warnings could be received in evidence where the suspect was not yet under arrest and the coercive elements described in *Miranda* were not present. *People v. P.,* 21 NY2d 1, 233 NE2d 255, 286 NYS2d 225 (1968). See, to like effect, *Evans v. United States,* 377 F2d 535 (5th Cir 1967); *United States v. Agy,* 374 F2d 94 (6th Cir 1967); *United States v. Schlinsky,* 261 F Supp 265 (D Mass 1966); *United States v. Davis,* 259 F Supp 496 (D Mass 1966); *State v. Noriega,* 6 Ariz App 428, 433 P2d 281 (1967); *People v. Allen,* 28 App Div2d 724, 281 NYS2d 602 (1967).

"In *State v. Taylor,* supra, it was held that incriminating statements could be received, even

though the suspect had not been advised of his rights. In that case, the officer was making a preliminary inquiry at the scene of an automobile accident to determine whether or not a crime had been committed. If the suspect had been given the appropriate advice before any questions were asked, the difficulty in that case could have been avoided; but we held that there was no error in receiving the evidence.

"In the case at bar, the trial court found that the suspect was in fact free of restraint at all times and left the scene of the interrogation as a free man. He was not arrested until substantially later. There is no reason, therefore, to overturn the trial court's finding that the defendant was not, in fact, in custody when he was being interviewed." 250 Or at 215-18.

*State v. Taylor,* 249 Or 268, 437 P2d 853 (1968), cited in *Travis,* involved a set of facts somewhat similar to the case at bar. There the court said, at p 272:

"In the matter before us, the officer was in the performance of a duty to investigate this accident and its cause. In determining its cause, he was required to determine in a preliminary way whether the cause was due to violation of law and, if so, whether there was reasonable cause to cite the defendant for that violation. This information is necessary in any case before an officer is justified in placing a person under arrest. Moreover, as stated in *Hoffa v. United States,* 385 US 293, 310, 87 S Ct 408, 17 L ed 2d 374, 386:

"'* * * Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction.'

"In the case at bar the officer asked more questions than the minimum necessary to establish

probable cause, but as soon as he concluded that an arrest should be made he stopped the questioning and advised the defendant of his rights * * *. Under these circumstances, we hold that the officer's investigation did not produce inadmissible evidence under the *Miranda* rule."

We note that counsel in this case, in addition to concerning themselves with whether or not the defendant was "in custody" at the time the pertinent questions were asked, appear to be concerned with whether he was at that time a "focal suspect." As we read *Miranda* and its progeny, including *Travis* and *Taylor,* the term "focal suspect" no longer has much, if any, significance, because those opinions tell us that the police are not required to give *Miranda* advice to an individual at the moment they have probable cause to believe he may be guilty of a crime—that the *Miranda* advice is required only when the interrogation is "custodial."[1]

The term "focal suspect" was first used in a pre-*Miranda* case, *State v. Neely,* 239 Or 487, 395 P2d 557, 398 P2d 482 (1965),[2] as a result of language in *Escobedo v. Illinois,* 378 US 478, 84 S Ct 1758, 12 L Ed 2d 977 (1964):

"* * * We hold only that when the process

---

[1] In some instances the fact that a person is a suspect may have some evidentiary significance in determining whether the interrogation was custodial by virtue of that individual's being deprived of his freedom of action in a significant way at the time of the interrogation.

[2] There the Oregon Supreme Court, at pp 503-04, in a discussion of the *Escobedo* requirements, stated:

"We hold that the Sixth Amendment as made obligatory by the Fourteenth Amendment requires that before law enforcement officials can interrogate a person who is the focal suspect of a crime, such person must effectively be informed * * *."

shifts from investigatory to accusatory—*when its focus is on the accused* and its purpose is to elicit a confession—our adversary system begins to operate * * *." (Emphasis supplied.) 378 US at 492.

In *Miranda,* the Supreme Court said:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way * * *." 384 US at 444.

This passage is accompanied by a footnote which states:

"4. This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused." 384 US at 444.

Affirmed.