Argued February 1, affirmed February 26, 1973

## STATE OF OREGON, *Respondent, v.* DOUGLAS EDWARD MOORE (No. 20378), *Appellant.* STATE OF OREGON, *Respondent, v.* MARK DWAYNE PORTER (No. 20379), *Appellant.*

506 P2d 731

*Bruce W. Williams,* P.C., Salem, argued the cause and filed the brief for appellants.

*John L. Snyder,* District Attorney, Dallas, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C.J.

The defendants upon trial by jury were convicted of first-degree arson. ORS 164.325. On appeal they contend: (1) there was not sufficient evidence against them to make a jury question; (2) statements made by them to the Dallas fire chief and a police officer shortly after the fire should have been suppressed because they were not given *Miranda*[1] advice prior to the questions which elicited the statements; and (3) that in his closing argument the prosecuting attorney made prejudicial comments about defendants' motives.

On December 1, 1971, the defendants, who were partners in a construction business, purchased for a total price of $46,000, from one Lloyd Penner, property in Dallas, Oregon, which had on it, among other structures, an old house. The defendants paid only $2,500 down. There was a mortgage on the property and from a document in evidence it appears that of the remainder of the purchase price due from the defendants, $9,000, was to go to the seller, and the balance through

---

[1] Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR 3d 974 (1966).

him to the mortgagee. The December 1, 1971, purchase contract stated:

> "The sellers agree to give warranty deed and take back a note secured by a second mortgage for an amount not to exceed $9000.00 * * *. When second mortgage note is reduced to $5000.00, the old frame house may be razed and the sellers agree to subordinate said mortgage to a construction loan not to exceed the cost of construction of an apartment building not to exceed 4 living units, plans to be approved by sellers * * *."

There is evidence that the defendants were desirous of razing the "old frame house" (which they were convicted of burning) and replacing it with a new structure as soon as they could. There is also evidence that there was fire insurance on the property, including $7,000 of coverage on the building in question, and that by agreement between defendants and Mr. Penner this policy had been assigned to the defendants subject to the interests of the mortgagee and the seller, Mr. Penner.

The house was occupied by a Mr. Pelto and his family. Pelto had originally rented it from Penner and after the sale continued to rent it from the defendants. On the day before the fire the pipes in the house had frozen during a cold spell. Mrs. Pelto called the defendant Porter, and the defendants both came to the house the next day at about 1 p.m. They advised Mrs. Pelto that they could not fix the pipes before noon on the following day. The Peltos left with the intention of spending the night somewhere else. The defendants came to the premises several times that afternoon and there is evidence that they were seen leaving the premises the last time just shortly before the fire was discovered. There is ample evidence in

the record that the fire was "set," including the fact that as soon as people, including Mr. Pelto, entered the premises after the fire they noted a strong smell of gasoline or some other petroleum product. There was no evidence that after the Peltos left anyone but the defendants had entered the house, and Mr. Pelto testified that he did not keep any petroleum products on the premises. We find the above facts sufficient to demonstrate that there is no merit to the defendants' claim of insufficiency of the evidence.

The fire chief who investigated the fire thought that it might have been caused by arson. He and a police officer knew that the defendants were in a nearby realty office and shortly after the fire went there to talk to defendants. The policeman's *in camera* testimony was that he was suspicious of arson and in the course of investigation wanted to talk to the owners. He stated that he had no reason at that time to place them under arrest, got into no arguments with them, did not threaten them, and never implied that they were not free to go. In fact, the defendants were not arrested until after the grand jury indictment was returned—more than three weeks later. The policeman testified that the defendants stated that they did not enter the house, because the door was locked and they had no key, and that they also stated that they had no insurance on the house. Mrs. Pelto's testimony was that prior to leaving the house that day she had offered defendants a key and they told her they did not need it because they already had one. The defendants testified that the police officer and the fire chief engaged in a heated exchange with them and accused them of arson. The fire chief's testimony was substantially the same as that of the police officer. The trial judge found that at the time they were being

questioned the defendants were not in custody or under any form of coercion or restraint. The record supports this ruling. *State v. Travis,* 250 Or 213, 441 P2d 597 (1968); *State v. Crossen,* 10 Or App 442, 499 P2d 1357, Sup Ct *review denied* (1972).

In the course of his closing argument the prosecutor stated:

"Now, the house burns down. It's razed. But this house is insured for $7,000. What's going to happen? The insurance company is going to pay off. And let's assume that the full value of that thing is $7,000 and it burns to the ground. The insurance company is going to pay that $7,000. Four Thousand Dollars of that is going to go to pay that off for sure. Forty-Six Thousand Dollar piece of property, now they only owe $38,200. And what happens to the other $3,000? They pocket it or they apply it on the principal and bring it down even further."

■ On appeal the defendants assign this statement as error. Even assuming that for the purposes of argument these comments went too far there was no objection. The only objection came when the prosecutor went on to say that the argument of defense counsel that there was no motive was ridiculous, and that defense counsel knew it. Defense counsel objected on the ground that that impugned his integrity. The court sustained the objection and the prosecutor apologized. Whether or not the latter statement by the prosecutor was error we need not consider. It is not assigned as error, and in any event does not warrant reversal.

Affirmed.