Argued May 19, affirmed as to Robert Myers, reversed as to
Julia Myers, July 29, 1971

# STATE OF OREGON, *Appellant, v.* ROBERT MYERS and JULIA MYERS, *Respondents.*

487 P2d 663

*Jacob B. Tanzer*, Solicitor General, Salem, argued the cause for appellant. With him on the brief was Lee Johnson, Attorney General, Salem.

*Thomas H. Ryan*, Portland, argued the cause and filed the brief for respondents.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

FOLEY, J.

The state appeals from a suppression order of the Multnomah County Circuit Court made after a pretrial hearing, which order suppressed evidence consisting of certain statements of the defendants and photographs taken and observations made by the police.

On October 3, 1968, an Oregon State Police officer, accompanied by an insurance investigator, arrived

at the defendants' Portland residence armed with an indictment, charging them with the crimes of obtaining money and property by false pretenses and of conspiracy to do so, and with warrants for their arrest. The two men spent approximately 30 to 40 minutes in the house during which time the officer questioned defendants about the subject matter of the indictment and the investigator photographed the premises. Defendant Robert Myers filed a pre-trial motion to suppress any statements or other evidence obtained from him during the October 3 investigation on the ground that he had not been warned of his right to remain silent and his right to counsel. After conducting a hearing on the motion the circuit court found, in substance, that the police officer advised defendants of their constitutional rights as required by *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966), and that all statements made by defendants after receiving these warnings were voluntary and uncoerced but the court stated that it could not conclude that the defendants made an understanding and intelligent waiver of their rights before speaking.[1] Thereafter the court issued the suppression order which is the basis of this appeal.

The state contends that the suppression order should not have issued because *Miranda* was inapplicable since defendants were neither in custody nor in a police-dominated atmosphere in which the coercive effects of custody were present. We review this case, therefore, on the sole question of whether or not

---

[1] In addition the court found that an alibi statement made by defendant Julia Myers was volunteered and not the product of custodial interrogation and, consequently, that it was admissible in evidence.

custodial interrogation occurred at defendants' residence on October 3, 1968.

■ The United States Supreme Court, in *Miranda*, defined custodial interrogation as

"* * * questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *" 384 US at 444.

Custodial interrogation is not limited to questioning within the confines of the police station and may well occur even in one's own home. *Orozco v. Texas,* 394 US 324, 89 S Ct 1095, 22 L Ed 2d 311 (1969). See for other examples of non-station house custodial interrogation: *United States v. Bekowies,* 432 F2d 8 (9th Cir 1970); *United States v. Campos-Serrano,* 430 F2d 173 (7th Cir 1970); *Gonzales v. Beto,* 425 F2d 963 (5th Cir) (dicta), *cert denied* 400 US 928, 91 S Ct 194, 27 L Ed 2d 189 (1970); *United States v. Lackey,* 413 F2d 655 (7th Cir 1969); *Agius v. United States,* 413 F2d 915 (5th Cir 1969); *People v. Wright,* 273 Cal App 2d 325, 78 Cal Rptr 75 (1969).

■ A fair reading of all the circumstances involved here leads us to the conclusion that defendants were subjected to custodial interrogation. The police officer and the investigator arrived at their residence at about 2 p.m. on October 3. Mrs. Myers received them at the door and was told that they had warrants for her and her husband's arrest. Mrs. Myers admitted the investigators to her home and then, at their request, went to the kitchen to notify her husband who was watching television with a friend. She testified that she told Mr. Myers and his guest that "something awful is happening * * * they have got a warrant

for our arrest." The guest apparently left shortly thereafter.

Although there is some conflict in the testimony the record establishes that the police officer either read or explained the arrest warrants and the indictment to both defendants and then advised them of their right to remain silent and their right to counsel in accordance with *Miranda*. The officer then indicated that he wished to discuss the charges in the indictment. Mr. Myers said he and his wife wished to co-operate and he then consented to the picture taking.

At the end of the conversation the police officer informed Mr. Myers that he "wouldn't exercise my prerogative of taking him in physical custody" at that time. He advised defendant to contact his attorney, arrange for bail and then report to Rocky Butte jail. Mr. Myers explained that the police officer did not take defendants to jail when he left because they were "stable people."

The case against defendants had already proceeded well beyond the stage of preliminary or on-the-scene investigations excluded from *Miranda* coverage when the investigators arrived at defendants' residence. See *State v. Taylor*, 249 Or 268, 437 P2d 853 (1968). We think that defendants were under arrest almost immediately after the police entered their home. We cannot imagine that they were free to leave prior to the termination of the interrogation. The fact that the police officer ultimately decided that it was unnecessary to take defendants with him when he left does not alter our conclusion. Questioning under these conditions constituted custodial interrogation, and compliance with the requirements of *Miranda* was required.

■ Mr. Myers testified that he did not hear the

*Miranda* advice. Since there was a conflict of testimony on this point, we are bound by the trial judge's finding of fact and therefore affirm the suppression order as to Mr. Myers. However, the evidence is lacking on which to base the ruling suppressing the admissions made by Mrs. Myers.

The record shows that she is 56 years old, of at least average intelligence, with good comprehension of oral communication and with considerable business experience as an employer. She concedes that prior to making any statements she heard and understood her *Miranda* rights. She then seeks to avoid the consequences of those statements merely by testifying, "We were just visiting, it seemed like."[2]

■ We hold, as a matter of law, that when the undisputed evidence is that a person of normal intelligence and understanding admits receiving and understanding the requisite advice, and, further, concedes that all statements made thereafter were completely voluntary, those statements are admissible in evidence. We therefore reverse as to Mrs. Myers. See *State v. Freeman,* 5 Or App 372, 484 P2d 867 (1971).

Affirmed as to the defendant Robert Myers.

Reversed as to the defendant Julia Myers.

---

[2] Not only did Mrs. Myers concede that the statements she made after receiving the warning were voluntary, but she volunteered, "I didn't tell him anything that I would't tell anybody."