TANZER, J.,
dissenting.
I dissent because I disagree with the majority on the threshold question of whether defendant was in custody. I would hold that he was not.
The majority correctly recognizes that the Miranda[1] procedures apply only to custodial interrogations. Its fallacy is in determining the existence or not of custody by choosing between an objective and a subjective test and then defining custody in terms of what a reasonable person would subjectively conclude. The majority premise that custody is determined by selection from the subjective-objective hybrid range of labels is not only fallacious, but it has no support in Miranda or its progeny.[2]
The Miranda decision is based on the fact of custody or not. The existence of actual custody — not whether a reasonable person or a nonreasonable defendant subjectively senses it — is the threshold for Miranda procedures and, incidentally, it is the only truly objective test. Thus, it is the initial judicial *[875] function in each case to determine whether custody or deprivation of freedom of action in any significant way exists or not as a matter of fact, not as a matter of subjective perception.
The correctness of the factual test of custody is demonstrated by the historical context of the Miranda decision. Miranda was preceded by a series of cases requiring the court to make case-by-case determinations of voluntariness from the "totality of the circumstances,” e.g., defendant’s age, education and intelligence, the length of interrogation, access to family or counsel, etc., as to whether defendant’s will was overborn. See, e.g., Lisenba v. California, 314 US 219, 62 S Ct 280, 86 L Ed 166 (1941); Crooker v. California, 357 US 433, 78 S Ct 1287, 2 L Ed 2d 1448 (1958); Spano v. New York, 360 US 315, 79 S Ct 1202, 3 L Ed 2d 1265 (1959); Rogers v. Richmond, 365 US 534, 81 S Ct 735, 5 L Ed 2d 760 (1961); Haynes v. Washington, 373 US 503, 83 S Ct 1336, 10 L Ed 2d 513 (1963); Malloy v. Hogan, 378 US 1, 84 S Ct 1489, 12 L Ed 2d 653 (1964). An implicit purpose of laying out specific procedures for custodial interrogation in Miranda was to eliminate the necessity of making gestalt determinations and to substitute a readily applicable procedure. The majority, however, instead of having us determine vohmtariness or not from the totality of the circumstances, would have us determine custody or not from the totality of the circumstances. Thus, the approval of and reliance upon our approach in State v. Myers, 6 Or App 219, 222, 487 P2d 663 (1971), where we said
" 'A fair reading of all the circumstances involved here leads us to the conclusion that defendants were subjected to custodial interrogation * * ” (Emphasis in majority opinion.)
is exactly contrary to the spirit of the Miranda opinion.[3]
*[876] The most significant post-Miranda case on custody also reinforces this determination. In Oregon v. Mathiason, 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977), defendant came voluntarily to the police station, was accused of the crime and questioned in a back room, and was released after he confessed. The United States Supreme Court held Miranda not to be applicable because defendant was not in custody. The court stated:
"Such a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.’ Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer Miranda warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. Miranda warnings are required only where there has been such a restriction on a person’s freedom as to render him 'in custody.’ It was that sort of coercive environment to which Miranda by its terms was made applicable, and to which it is limited.” (Original emphasis.)
Here, defendant was not in custody or deprived of his freedom of action, by any factual test. Although he was initially arrested, he was clearly discharged from custody and sent home. He was brought to the station the next day voluntarily. He was not told he was under arrest. No force was placed upon him. He was not restricted. He was not denied any request to leave. To the contrary, he was told repeatedly that he was not under arrest. This noncustodial situation continued at least until after he confessed, as the facts are described by the majority:
"The defendant then twice asked Heide and Van Horn if he could speak to his parents if he first told the *[877] police what had happened. Heide and Van Horn stated that he could, and also told defendant he was not under arrest. Defendant then asked the police if he would be able to leave if he described the nature of his involvement in the homicide. Heide and Van Horn said 'yes.’ Defendant paused briefly and, at 11 a.m., told police that he had killed 'Ricky.’ Heide and Van Horn were surprised at defendant’s confession. They had expected defendant to implicate his roommate, since they had just discovered evidence implicating his roommate.”
Under the terms of Miranda, particularly as explained in Mathiason, there was no custody.
We tend nowadays to think that Miranda is the sole spigot from which flows protection from extra-judicial interrogation, but that is not so. Where the interrogation is noncustodial, traditional totality-of-circumstances cases, exemplified by Haynes v. Washington and the other cases cited above, apply. By that standard, it is clear that defendant’s will was not overborn by coercive police conduct, and the confession should be regarded as voluntary.
Incidentally, while I disagree with the threshold issue of custody, I concur with the treatment of the other issues by the majority.
Judges Lee and Richardson join in this dissent.

 Miranda v. Arizona, 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694, 10 ALR3d 974 (1966).

 If the "objective test” for custody has a familiar ring, that is because we use it in the law of search and seizure, not the law of self-incrimination.

The majority’s reliance upon the pre-Miranda decision of State v. Evans, 241 Or 567, 407 P2d 621 (1965), as authority for an objective perception test under Miranda is misplaced.