**Francis SALEMME, Petitioner-Appellant,**

v.

**Theodore RISTAINO,
Respondent-Appellee.**

No. 78–1195.

United States Court of Appeals,
First Circuit.

Argued Sept. 15, 1978.

Decided Nov. 22, 1978.

---

Argued by Harvey Brower, Lawrence, Mass., with whom David Berman, Medford, Mass., was on brief, for petitioner-appellant.

Michael C. Donahue, Asst. Atty. Gen., Boston, Mass., with whom Francis X. Bellotti, Atty. Gen., and Stephen R. Delinsky, Asst. Atty. Gen., Boston, Mass., were on brief, for respondent-appellee.

Before KUNZIG, Judge, U.S. Court of Claims,* CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

Francis Salemme was convicted of assault with intent to murder and assault and battery by means of a dangerous weapon, in violation of Mass.Gen.Laws ch. 265 §§ 18 and 15A (1970). He was tried in Middlesex County Superior Court from June 11, 1973, through June 15, 1973. He received two sentences, to run consecutively, of 19–20 years and 9–10 years. The Massachusetts Appeals Court affirmed his convictions on March 4, 1975, Mass.App.Adv.Sh. (1975) 331, 323 N.E.2d 922, and on April 23, 1975, the Massachusetts Supreme Judicial Court denied further review. Salemme thereupon filed for a writ of error, which was denied by a single justice, later confirmed by the Supreme Judicial Court. Mass.Adv.Sh.

(1976) 1466, 348 N.E.2d 799. Salemme then petitioned the federal district court for a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 et seq. Salemme appeals the denial of that writ to us.

The facts underlying Salemme's conviction derive from a shocking crime: John E. Fitzgerald, Jr., a Boston attorney representing Joseph Barboza Baron (Barboza), sustained severe and crippling injuries on January 30, 1968, when his car exploded upon his turning the ignition key. According to a self-confessed accomplice, Robert Daddieco, Salemme asked Daddieco for help in killing "Joe Barboza's lawyer." Barboza, during 1967 and early 1968, had testified against other reputed top Mafia figures. Daddieco testified that he accompanied Salemme to the scene of the crime while Salemme wired Fitzgerald's car and that he previously had observed Salemme practice wiring dynamite to a car of the same model and year as Fitzgerald's, presumably in preparation for the actual job. Salemme was indicted on two counts on October 10, 1969, and was finally apprehended in New York on December 14, 1972, where he denied his true identity.

Salemme claims that the district court erred in dismissing his petition for writ of habeas corpus. He asserts that certain errors at the trial level, plus an error by the Massachusetts Appeals Court, denied him due process and that he is, therefore, incarcerated in violation of his constitutional rights.

■ A. Petitioner argues that the Massachusetts Appeals Court articulated a novel standard of review for evidentiary rulings and applied the rule retroactively, to his detriment. He alleges that the Appeals Court ruled that evidence improperly admitted would escape appellate review in the event counsel failed to make a subsequent motion to strike the offending evidence.

At trial, Fitzgerald stated that Barboza had testified against several underworld figures, later specifically mentioning Patriarca, Angiulo and French, reputedly well-

* Sitting by designation.

known leaders of the Mafia. Petitioner objected to the admission of the specific names and excepted to the court's ruling the evidence admissible. The prosecution's theory was that the attack on Fitzgerald was connected to his representation of Barboza. The Massachusetts Appeals Court ruled that the trial court did not abuse its discretion in admitting the specific names since the prosecution was entitled to present evidence in support of its theory for the bombing. The Appeals Court observed that simply because the persons named were figures of some notoriety and that this might reflect adversely on Salemme did not make the testimony inadmissible since it was admissible, pursuant to the prosecution's theory, to show motive. The Appeals Court noted further that there was nothing to suggest, at the juncture where the testimony was admitted, that the introduction of the names was not preliminary to testimony linking the named individuals to Salemme. Subsequently, no such link was established. The trial court thereupon ordered the prosecution not to mention again that Barboza had testified against Angiulo and Patriarca. Finally, the Appeals Court observed that the failure of such a link made the testimony "subject to a motion to strike with appropriate instructions. No such motion or request for instructions appears to have been made." It is this latter language from the Appeals Court decision upon which petitioner now attempts to hinge his plea of denial of due process.

Salemme contends that this language indicates that, absent a motion to strike, an appellate court will not review assertedly erroneously admitted material. Such a reading is strained and without basis. The Appeals Court *did* rule on the question of whether the trial court erred in admitting the names of the putative underworld leaders: it found no abuse of discretion. The court's comment in reference to the absence

of a motion to strike did not, as suggested by petitioner, erect a new barrier to appellate review. The remarks that petitioner could have moved to strike or request limiting instructions states nothing more than the obvious: evidence frequently is admitted preliminary to its being subsequently connected-up. Should it develop that material admitted under this rubric is never linked with the facts of the case, thus rendering it irrelevant, it becomes subject to a motion to strike. Evidence is, of necessity, admitted piece by piece in a trial; it is not always possible to ascertain which evidence will be ultimately relevant. The Massachusetts Appeals Court, viewing the trial court's ruling in retrospect, found that the admission of the named individuals was a legitimate step in the government's case against Salemme. When the Commonwealth later failed to establish any link between Salemme and the reputed Mafia leaders, the evidence which had been properly admitted, in anticipation of such a link, became subject to a motion to strike. Even though such a motion was not made, the trial court's action in ordering the prosecution not to mention the testimony again was an effective substitute. This sequence of events does not indicate that the trial court erred in admitting the testimony in the first place, nor that the appellate court posed a new barrier to review of the question.[1]

 B. Salemme raises a second argument based on the admission into evidence of the testimony discussed in Part A, *supra*, of this opinion. He argues that, by virtue of the naming of Patriarca, Angiulo and French, he was convicted on a guilt by association theory. Habeas relief is unavailable to persons solely on the basis of alleged errors in evidentiary rulings. *Lisenba v. California*, 314 U.S. 219, 228, 62 S.Ct. 280, 86 L.Ed. 166 (1941). As early noted by the Supreme Court, "[t]he writ of

---

1. Salemme urges that the Appeals Court ruled that, in the absence of a motion to strike or request for instructions, the trial court's ruling did not rise to *reversible* error. As we note in our discussion in the text of the opinion, the Appeals Court ruled that *there was no error* in

the court's admitting the testimony. The Appeals Court did not rule that, but for the failure to move to strike or request instructions, the trial court's ruling would be reversible error. The appellate court simply found no error by the court below.

*habeas corpus* . . . does not operate as a writ of error . . . ." *Benson v. McMahon*, 127 U.S. 457, 461, 8 S.Ct. 1240, 1242, 32 L.Ed. 234 (1888). We cannot find that the mention of the three names so infused the trial with inflammatory prejudice as to render a fair trial impossible. *Lisenba v. California, supra*, at 228, 62 S.Ct. 280. The trial court limited whatever prejudicial effect the testimony may have had by not permitting the prosecution to repeat the three names during closing argument. It was defense counsel himself who elicited, through a defense witness, the fact that Barboza had testified as a government witness in other cases. The most damaging evidence came from the self-admitted accomplice Daddieco who described in detail Salemme's preparation for the bombing and the actual wiring of Fitzgerald's car. Although Daddieco was subjected to thorough cross-examination, emerging as a tarnished witness himself, the jury had to believe his story in order to convict Salemme. The admission of the three names was, as noted by the district court, at most cumulative. It does not meet the constitutional threshold required for habeas relief. *See Grieco v. Meachum*, 533 F.2d 713, 716 (1st Cir.), *cert. denied sub nom. Cassesso v. Meachum*, 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976).

C. Salemme claims that his conviction on the two count indictment subjected him to double jeopardy. His argument rests on the grounds that (1) a single transactional act gave rise to both crimes and that, (2) because of the jury charge, the trial court merged the two crimes of assault with intent to murder while armed with a dangerous weapon and assault and battery by means of a dangerous weapon into a single crime which should have rendered impermissible the imposition of two sentences.

■■■ We dispose of the second point quickly. This issue was not raised in any state proceeding and is, therefore, not properly before us in determining whether it might warrant habeas relief. *Picard v. Connor*, 404 U.S. 270, 275–78, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). *See also*, 28 U.S.C.

§§ 2254(b) and (c). The judicial authority of Massachusetts has never been given the opportunity by petitioner to rule on the merits of his contention. Principles of federalism and comity dictate that we not interject our views on this issue of state law at this stage. *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950) (overruled in other respects, *Fay v. Noia*, 372 U.S. 391, 435–36, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963)). Counsel's argument that essentially the same point was raised in Salemme's petition for writ of error to the Massachusetts Supreme Judicial Court, when defendant argued that two sentences were impermissible in the absence of a meaningful distinction between the two offenses, is without merit. Petitioner is required to present the same claim he urges in federal court to the state tribunal. *Picard v. Connor, supra*, at 276, 92 S.Ct. 509; *Nelson v. Moore*, 470 F.2d 1192, 1197 (1st Cir. 1972), *cert. denied*, 412 U.S. 951, 93 S.Ct. 3017, 37 L.Ed.2d 1003 (1973); *Needel v. Scafati*, 412 F.2d 761, 766 (1st Cir.), *cert. denied*, 396 U.S. 861, 90 S.Ct. 133, 24 L.Ed.2d 113 (1969). The claim that the trial court erred in its jury instructions is not the "substantial equivalent," *Picard v. Connor, supra*, at 278, 92 S.Ct. 509, of a claim that double jeopardy proscribes sentencing for two crimes in the absence of a meaningful distinction in the elements of the two crimes charged. We agree with the district court that the substance of petitioner's claim was never presented to the state courts and is, therefore, not properly before us. *See generally*, Shapiro, *Federal Habeas Corpus: A Study in Massachusetts*, 87 Harv.L.Rev. 321, 355–61 (1973).

■■■ Salemme's contention that the two offenses in the indictment do not require separate elements of proof was rejected by the Massachusetts Supreme Judicial Court, which held that assault with intent to murder while armed with a dangerous weapon, Mass.Gen.Laws ch. 265, § 18, required a showing of a specific intent to kill and that assault and battery by means of a dangerous weapon, Mass.Gen.Laws ch. 265, § 15A, necessitated proof of a battery and

the application of force via use of a weapon. It is well settled that the interpretation of a state statute is for the state court to decide and when the highest court has spoken, that interpretation is binding on federal courts. *See, e. g., Bond v. Oklahoma*, 546 F.2d 1369, 1377 (10th Cir. 1976); *Hall v. Wainwright*, 493 F.2d 37, 39 (5th Cir. 1974); *McMichaels v. Hancock*, 428 F.2d 1222, 1223 (1st Cir. 1970). This court will review solely for constitutional error. *See* 28 U.S.C. § 2254(a).

█ Once having determined that Massachusetts law requires a different element of proof for the two crimes charged, we think it clear that Salemme was not subjected to double jeopardy simply because the two charges arose from a single act. "The fact that both charges related to and grew out of one transaction ma[k]e[s] no difference." *Carter v. McClaughry*, 183 U.S. 365, 394–95, 22 S.Ct. 181, 193, 46 L.Ed. 236 (1902). *See also, Gore v. United States*, 357 U.S. 386, 390–92, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), cited by defendant in advancement of his position, is not contra. *Ashe* involved prosecution of a defendant who had previously been acquitted of robbing one of six cardplayers who had been held up by three or four masked gunmen while playing poker. Following his acquittal of robbing one of the players, the state charged him under a separate indictment for robbing one of the other poker players. The Court held that principles of collateral estoppel barred relitigation of the issue whether he had been one of the robbers. *Id.* at 443–46, 90 S.Ct. 1189. Petitioner misreads Mr. Justice Brennan's concurring opinion when he interprets it as holding that two crimes cannot be predicated on a single transaction. *See id.* at 451–56, 90 S.Ct. 1189. In criticizing the "same evidence" test, Mr. Justice Brennan cautions against possible prosecutorial abuse in failing to consolidate in one trial all the charges emanating from a "single criminal act, occurrence, episode, or transaction." *Id.* at 453–54, 90 S.Ct. at

1199. He urges this procedure in order to promote judicial economy, convenience, and justice. It is the fragmentation into separate trials which is the evil Mr. Justice Brennan is concerned with. He most certainly does not articulate the principle which petitioner attributes to him, viz., that a single transaction cannot give rise to separate criminal offenses.

Salemme next claims that the Massachusetts Supreme Judicial Court altered the prior law when it held, in ruling on his petition for writ of error, that the two offenses charged required proof of a separate element. We reiterate the findings of the district court that the cases cited by petitioner in support of his contention simply do not bear him out. We can find nothing in the cases he forwards to suggest that the crimes for which Salemme was sentenced were fungible prior to the Massachusetts Supreme Judicial Court's decision on his writ of error.

█ D. Petitioner suggests that his constitutional rights were abridged by the purported denial of access to witnesses prior to trial. The right to produce witnesses, by compulsory process if necessary, in one's behalf is, of course, a constitutional guarantee. U.S.Const. Amend. VI, Salemme charges that, since several witnesses were held in protective custody and were not available for interviews prior to trial, he was denied his constitutional rights. While it is clear that both sides have the right to interview witnesses prior to trial, *Callahan v. United States*, 371 F.2d 658, 660 (9th Cir. 1967), and that curtailment of this right, given our adversarial system, should be permitted only when the "clearest and most compelling consideration[ ]," *Dennis v. United States*, 384 U.S. 855, 873, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), so require, we dismiss petitioner's argument on two grounds: First, the prosecution cooperated fully with the defense to provide access to the witnesses prior to their taking the stand; furthermore, Salemme does not particularize in what fashion he was prejudiced by the failure to interview witnesses prior

88

to trial. *United States v. Murray*, 492 F.2d 178, 195 (9th Cir. 1973), *cert. denied*, 419 U.S. 854, 95 S.Ct. 98, 42 L.Ed.2d 87 (1974). The trial judge was concerned for the safety of the witnesses, and we cannot say, given the circumstances of the crime, that he erred in refusing pretrial access. On the basis of the record before us, we find no constitutional infirmity.

Second, we cannot find that Salemme presented this point to the state court. The exhaustion requirement has thus not been met. 28 U.S.C. § 2254(b).

■ E. The failure by the trial court to conduct an individual voir dire of the veniremen is alleged to be constitutionally defective. This matter is left to the sound discretion of the trial court, *Ristaino v. Ross*, 424 U.S. 589, 594, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976), and will not be reversed absent circumstances which create an impermissible threat of an unfair trial. *Id.* at 595, 96 S.Ct. 1017. *Compare Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973). Here, there was no such threat. The trial was held more than five years following the incident. Any publicity surrounding the event had long since passed from the public's mind. The trial court, after detailing the particulars of the crime, queried the panel on whether they recalled the event. Only two responded affirmatively. Of those, one was excused when she said that she could not be impartial; the other remained on the panel after saying he could be impartial and was not challenged by the defendant. As we recently noted, individual voir dire of prospective jurors is not automatically required whenever a case has received notoriety in the press. *United States v. Perrotta*, 553 F.2d 247, 250 n.6 (1st Cir. 1977). This was not an instance where adverse publicity immediately prior to or during trial was alleged, *compare United States v. Rhodes*, 556 F.2d 599 (1st Cir. 1977), where more extensive questioning might be warranted. The incident here occurred many years prior to trial so that memories had become sufficiently dulled:

only two of the jury panel recalled anything about it. These circumstances do not present an appropriate backdrop for finding abuse of the admittedly broad discretion, *Perrotta, supra*, at 250; *cf. United States v. Jones*, 542 F.2d 186, 194 & n.9 (4th Cir. 1976), of the trial judge. *See Connors v. United States*, 158 U.S. 408, 413, 15 S.Ct. 951, 39 L.Ed. 1033 (1895); *Ristaino v. Ross, supra*, 424 U.S. at 594–95, 96 S.Ct. 1017.

■ F. Salemme asserts that he was entitled to a mistrial because of a remark made by the prosecutor during his opening statement. The remark concerned a conversation between an F.B.I. agent and Salemme which the prosecutor recounted as follows:

> You will hear further from Mr. Connolly that Mr. Salemme said to him when they were leaving the F.B.I. office, "Would you wish me luck?" and Mr. Connolly will testify that he said, "I wish you luck, if you are not guilty." And Mr. Salemme said to him, "I have one heat, but I have a certain problem in another one."

The trial court cautioned the jury not to take as evidence any remarks made by the counsel during opening statement; no corrective instructions were sought by defendant. This ambiguous exchange does not, within the context of the entire trial, suggest so inflammatory an atmosphere as to render the trial unconstitutional. *Donnelly v. DeChristoforo*, 416 U.S. 637, 645, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). This isolated comment from the opening statement, viewed through the lens of the trial court's corrective instruction does not implicate denial of Salemme's due process rights. The comment was ambiguous, possibly referring to the two count indictment or to an unrelated crime. Since the possibility existed that it could be interpreted to refer to unrelated criminal activity, the trial court properly instructed the jury to disregard comments made during opening statements which were later not admitted into evidence. This tableau falls far short of the type of pervasive prejudicial effect neces-

sary to sustain a claim of due process deprivation.[2]

G. Salemme's final contention is that the so-called "Tuey" or "Allen" charge given by the trial court was constitutionally flawed. The "Allen" charge, also known as the "dynamite" charge, is given to deadlocked juries to encourage them to arrive at a verdict. The language of the Allen charge was approved in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). It has come under sharp attack in this circuit, *United States v. Flannery*, 451 F.2d 880, 883 (1st Cir. 1971); *United States v. Angiulo*, 485 F.2d 37, 40 n.2 (1st Cir. 1973), as well as in others. *See, e. g., United States v. Amaya*, 509 F.2d 8, 12–13 (5th Cir. 1975); *United States v. Fioravanti*, 412 F.2d 407, 420 (3d Cir.), *cert. denied sub nom. Panaccione v. United States*, 396 U.S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969); *United States v. Brown*, 411 F.2d 930, 931–34 (7th Cir. 1969), *cert. denied*, 396 U.S. 1017, 90 S.Ct. 578, 24 L.Ed.2d 508 (1970). The criticism which has increasingly been launched against the charge in recent years rests on its potentially coercive effect on minority jurors. The Massachusetts Supreme Judicial Court disapproved of the charge in *Commonwealth v. Rodriquez*, 364 Mass. 87, 300 N.E.2d 192 (1973). In so holding, the court determined that its ruling would not be applied retroactively, 300 N.E.2d at 200. Salemme does not, therefore, come within the protective embrace of *Rodriquez*. Neither *Rodriquez* nor the other cases which have disapproved of the Allen charge have done so on constitutional grounds, but rather under the supervisory powers of the court. Failure to apply the standard retrospectively is not, therefore, a matter which imports constitutional dimensions. Since even procedural changes which do implicate constitutional guarantees are not automatically accorded retroactive effect, *Linkletter v. Walker*, 381 U.S. 618, 629, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), we can

find no error in the failure to so apply the standard enunciated in *Rodriquez*. In fact, we did not apply our disapproval of the charge retroactively in *United States v. Angiulo, supra*, but rather rested our decision on the failure of the district court to adhere to the standards previously announced in *Flannery, supra*, 451 F.2d at 883.

We, therefore, review the charge as given by the trial court solely for the question of whether it was so coercive as to impermissibly invade the province of the jury. We conclude that it was not. Although the court did admonish the jurors that the case would have to be decided at a later date if no verdict were reached, the court did counsel the panel to listen equally to one another's view, to have "a proper regard for the judgment of others" and not to sacrifice conscientiously held convictions. We think the composite effect of this jury instruction was not skewed in the direction of intimidating minority members to comply with the views of the majority. *See United States v. Bailey*, 468 F.2d 652, 662 (5th Cir. 1972); *United States v. Sawyers*, 423 F.2d 1335, 1341–42 (4th Cir. 1970). The failure of the trial court to reinstruct the jury on the burden of proof was not constitutionally defective since extensive instructions had been previously given. The model charge recommended by the ABA does not include a reinstruction on the principles of burden of proof. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Trial by Jury, Commentary to § 5.4(a), (Approved Draft 1968). We do not endorse the charge given by the trial court; we merely find no constitutional error in it.

*The order of the district court is affirmed and the petition for writ of habeas corpus is dismissed.*

---

2. Cases cited by defendant in support of his proposition pertain to the situation where a statement made by a co-conspirator is admissible against the defendant. *Krulewitch v. United States*, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). The cases are inapposite for consideration of whether a fair trial has been rendered impossible due to prejudicial comments by the prosecutor in an opening statement.