Max J. ALLEN, Petitioner,

v.

Linwood H. SNOW, Respondent.

Michael R. CAPPIELLO, Petitioner,

v.

John J. BUCKLEY, Respondent.

Martin KOPLOW, Petitioner,

v.

John J. BUCKLEY, Respondent.

Civ. A. Nos. 80–308–S, 80–312–S and 80–316–S.

United States District Court, D. Massachusetts.

April 18, 1980.

---

Ronald F. Kehoe and Barbara Bruce Williams, Haussermann, Davison & Shattuck, Boston, Mass., for petitioner in Allen v. Snow.

David A. Mills, Mills & Teague, Boston, Mass., for petitioner in Cappiello v. Buckley.

Albert L. Hutton, Jr., Boston, Mass., for petitioner in Koplow v. Buckley.

Paul W. Shaw, Asst. Atty. Gen., Boston, Mass., for respondents.

## MEMORANDUM AND ORDER

SKINNER, District Judge.

On September 29, 1978, petitioners were convicted of conspiring to commit arson and conspiring to defraud an insurer by reason of arson, after a joint trial by jury. These convictions were affirmed by the Supreme Judicial Court of Massachusetts. *Commonwealth v. Allen,* —— Mass. ——, 400 N.E.2d 229 (1980). Petitioners filed petitions for habeas corpus under 28 U.S.C. § 2254 on February 18, 1980, which the Attorney General of Massachusetts has moved to dismiss. In response, petitioners seek an evidentiary hearing.

Petitioners allege three Constitutional violations in support of their request for habeas corpus relief: (1) the trial judge improperly interfered with defense counsel in their investigation of prospective jurors, thereby vitiating the Sixth Amendment's guarantee of an impartial jury and effective assistance of counsel; (2) the instructions were constitutionally deficient in that no accomplice charge was given, nor was a key witness' plea bargain adequately presented to the jury, in violation of the Fourteenth Amendment; (3) the improper cross-examination of petitioner Koplow's wife was so prejudicial as to deny petitioners' right to a fair trial, due process and effective assistance of counsel.

## I.  Investigation of Venire Members by Defense Counsel

Although the facts were extensively detailed by the Supreme Judicial Court in *Commonwealth v. Allen, supra,* portions of the record crucial to my determination bear repetition. During impanelment of the jury for this highly publicized case, the Commonwealth informed the judge that investigators hired by the petitioners had been interviewing the neighbors of prospective jurors. The trial judge thereafter had a series of conferences with counsel to discuss the propriety of this practice. The judge's initial reaction was that the investigation was "extraordinarily dangerous" and "highly unethical," but he requested further information before making a ruling. After two more prospective jurors were impanelled, defense counsel requested another conference, at which time the court again questioned the investigation, by referring to the ABA Standards Relating to the Prosecution Function and the Defense Function, § 7.2(b), at 263. The judge went on to state, however, "I'm going to leave that to your judgment. I have no position in the matter until I know what all the facts are . . . . I want to tell you this: I take an extraordinarily serious view of it."

That afternoon, counsel for Koplow requested a ruling on the matter, to which the judge responded, "I'm giving you no order now. I'm making no order for the record now. I'm making a judicial inquiry, under my authority to maintain the integrity of a jury that's about to hear a case. That's the very limitation I have right now, and until such time as my inquiry is completed, I will make no orders. When it is, I may not

make any then. I may reserve them until the end of trial . . . ." The judge then expressed his desire to discover which neighborhoods had been investigated, and inquired of the seated jurors whether they were aware of any inquiry in their neighborhoods.

The final colloquy took place the following afternoon, after eleven jurors had been seated. Petitioner Koplow's counsel informed the judge that the investigation had ceased as a result of the court's questioning. This exchange followed:

The judge: "I know you're trying to preserve some appellate right in that regard, but I don't think the record will indicate that I forbade a continuance of it, even though in the lobby you tempted me to do so. I refused to order you to stop that, so I want to make my position quite clear, too."

Counsel for Allen: "Well, perhaps—I think the record is already clear, but I think it should be noted on the record, if it's not, that the Court took the position with counsel that engaging in the conduct in that regard that counsel were so engaged in was unethical, in the Court's opinion, and it was in response to the attitude and position taken by the Court that counsel ceased the inquiry or investigation of prospective jurors to the extent that it was being done prior to that. . . ."

The judge: "Whatever I've said, I've said, and the record will show it. The record will clearly indicate there was no order for you to desist from the practice, because I understand that the position of all defense counsel is it's perfectly proper to have done what they did do. . . ."

Counsel moved for a mistrial after the final juror was selected, on the basis of the court's interference with the jury investigation, which motion was denied. On appeal, the Supreme Judicial Court did not reach petitioners' constitutional claims, as it found that the trial judge did not prohibit the investigation. The court stated that counsel was uncertain of their grounds in maintaining the investigation, and in view of the judge's "heavy responsibility" to preserve the impartiality of the jury, he acted properly and cautiously. Defense counsels' strategic determination to discontinue the investigation was not based upon any judicial order, nor upon any threat of contempt, and thus the motion for mistrial was found to be properly denied. *Commonwealth v. Allen,* 400 N.E.2d at 236.

The Commonwealth asserts that this court is foreclosed from considering the Sixth Amendment issues presented by petitioners, under the doctrine enunciated in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976), because the state court conviction was upheld on the basis of an independent and adequate state procedural ground. The Supreme Judicial Court's finding was not based upon a matter of state procedure, however, but upon a determination of fact that operated as a condition precedent to any constitutional claim. Prior to deciding whether a prohibition or inhibition of an investigation constituted constitutional error, petitioners must show they were, in fact, prohibited or reasonably inhibited from pursuing that investigation.

Under § 2254, federal courts are obliged to accept state court findings of fact unless, *inter alia,* those findings are not adequately supported by the record. The finding of the Supreme Judicial Court that the petitioners' counsel were not ordered to stop the investigation is clearly supported by the transcript.

Petitioners argue that, even absent any prohibition of the investigation, the judge's remarks so chilled counsel's representation as to deny petitioners a fair trial, an impartial jury, and effective assistance of counsel. They assert the need for an evidentiary hearing to establish the subjective intimidation of trial counsel. Although the Supreme Judicial Court did not specifically address the effect of inhibition, rather than prohibition, of the investigation upon petitioners' rights, I see no need for an evidentiary hearing. Even if subjective intimidation of counsel were established it would not result in the grant of the writ.

■ It is undisputed that a criminal defendant is guaranteed an impartial jury by the Sixth Amendment and by principles of due process. *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); *Irvin v. Dowd*, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961). On the other hand, voir dire "is conducted under the supervision of the trial court, and a great deal must, of necessity, be left to its sound discretion." *Connors v. United States*, 158 U.S. 408, 413, 15 S.Ct. 951, 953, 39 L.Ed. 1033 (1895); *see Aldridge v. United States*, 283 U.S. 308, 310, 51 S.Ct. 470, 471, 75 L.Ed. 1054 (1931). The selection of a jury panel, while crucial to both defense and prosecution, has never been left to the unfettered control of counsel. *See Schlinsky v. United States*, 379 F.2d 735, 738 (1st Cir. 1967).

In certain circumstances, a trial court's refusal to allow specific questions by counsel on voir dire to inquire into a potential juror's prejudices, biases, and interests has been held to violate due process or the "essential demands of fairness." *Aldridge v. United States, supra; Ham v. South Carolina*, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973); *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973). *But see Ristaino v. Ross*, 424 U.S. 589, 96 S.Ct. 1017, 47 L.Ed.2d 258 (1976). Petitioners make no assertion that they were denied the opportunity to question the jurors, nor do they argue that the resultant jury was not an impartial one.

■ Petitioners' only asserted constitutional violation is the judge's inhibition of their pre-voir dire investigation, pursued in order to unearth possible areas of juror bias. Any question that could have been asked in the neighborhoods, however, could have been asked on voir dire. The trial judge's determination that out-of-court inquiry be limited, thereby respecting potential jurors' rights of privacy, does no constitutional harm to the petitioners. "It is not, after all, the prospective jurors who are on trial in the cases that come before the courts." *United States v. Barnes*, 604 F.2d 121, 140 (2d Cir.), *petition for cert. filed*, 48 U.S.L.W. 3179 (Aug. 17, 1979) (No. 79–261). Furthermore, counsel's role in jury selection is to ensure an impartial jury, with no concomitant right to ". . . choose a jury that fits into some mold that he believes appropriate for his case." *Schlinsky v. United States*, 379 F.2d at 738.

■ In *United States v. Barnes, supra,* the Second Circuit upheld the trial court's decision to withhold the names and addresses of the jurors in light of the intense pre-trial publicity, and the potential for retaliation. The court concluded that "since the court gave counsel full opportunity for intelligent exercise of challenges by inquiring into the essentials of the case at hand, appellants were not deprived of any trial right which would require a new trial." 604 F.2d at 143. Petitioners have offered no case law warranting an extension of constitutional rights during voir dire to a pre-trial investigation. So far as appears, a state court may control pre-trial jury investigation, or prohibit it altogether, without violating any constitutional strictures, so long as voir dire protection is sufficiently preserved so as to identify and disqualify the biased juror.

II. *Cross Examination of Rose Koplow*

To rebut the prosecution's charge that petitioner Koplow had set fire to the premises in question on February 26, 1975, defense counsel called Mrs. Koplow as a witness to testify that Mr. Koplow had been at home that night, and that he had received a telephone call informing him of a fire on the subject premises. On cross-examination, the prosecutor asked Mrs. Koplow if she recalled receiving a telephone call on September 26, 1975, concerning a fire on a different property owned by her husband. The prosecutor explained at a bench conference that, while he had no evidence of any other calls, he did have evidence of other fires, and he was merely testing the memory of the witness. Over the objections of the petitioners, the prosecutor was thereafter allowed to ask the "sanitized" question, "Do you recall whether or not you received a telephone call [on a certain date] with

respect to a fire?" with respect to four other dates. Mrs. Koplow answered each question, "No" or "I don't know." The judge instructed the jury after the first "sanitized" question that no facts contained in the question could be considered evidence when answered, "I don't remember," "I don't know," or "No." This instruction was repeated in the general charge to the jury, specifically[1] referring to Mrs. Koplow's testimony. After denying petitioners' motions for a mistrial, the trial judge declared that Mrs. Koplow's testimony on cross-examination would only be applicable to the case of *Commonwealth v. Koplow.* The Supreme Judicial Court held on appeal, that any possible prejudice to the petitioners was cured by the judge's instructions. *Commonwealth v. Allen,* 400 N.E.2d at 241.

■■ A federal court acting upon a habeas petition will not ordinarily grant relief based upon alleged errors in evidentiary rulings. *Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941); *Salemme v. Ristaino,* 587 F.2d 81 (1st Cir. 1978). If the state trial court's actions had such a prejudicial effect upon the jury as to render a fair trial impossible, however, habeas will lie to correct the denial of petitioners' due process rights. *Salemme v. Ristaino,* 587 F.2d at 86; *Vanetzian v. Hall,* 433 F.Supp. 960, 963 (D.Mass.1977). The same would be true if a specific constitutional right had been jeopardized. *Morgan v. Hall,* 569 F.2d 1161 (1st Cir. 1978).

■ I cannot say that the questions propounded by the prosecutor, in the context of ten volumes of testimony, either trespassed upon a constitutionally protected privilege or so pervasively prejudiced the trial as to warrant relief. I must presume that the adequately curative instructions given were followed by the jury. *Salemme v. Ristaino,* 587 F.2d at 88. In view of these instructions and the relatively minor impact of the alleged prosecutorial overreaching,[1] I find no denial of due process in the denial of petitioners' motions for a mistrial. *Grieco v. Meachum,* 533 F.2d 713, 721

(1st Cir.) *cert. denied sub nom. Cassesso v. Meachum,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976).

### III. *Jury Instructions*

Petitioners allege the final charge to the jury was constitutionally deficient with regard to the credibility of George Lincoln, an indicted co-conspirator who had engaged in a plea bargain with the Commonwealth. Lincoln, a conceded accomplice and critical government witness, testified as to the existence of a conspiracy with petitioners and the accomplishment of its unlawful objectives. Petitioners each testified as to the legitimate nature of the business transaction they had undertaken with Lincoln. Petitioners requested the trial judge to supplement any general credibility instructions with an "accomplice charge," and specific references to Lincoln's plea bargain, in order to highlight the question of Lincoln's testimonial reliability. While the judge declined to give an accomplice charge, he did instruct the jury to consider, in evaluating a witness' credibility, the impact of any personal interest a witness may have upon the outcome of the case. As regards the plea bargain, the judge stated that "[e]vidence is not whether or not you agree that the Commonwealth was wise or prudent to plea-bargain with Lincoln for his testimony." The general charge on credibility was carefully detailed. The Supreme Judicial Court found no error in the instructions given. *Commonwealth v. Allen,* 400 N.E.2d at 241–2.

■ Faulty jury instructions will not serve as a basis upon which a federal court may overturn a state court conviction unless the allegedly inadequate charge ". . . so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten,* 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Habeas corpus relief has been granted in circumstances where instructions improperly shifted the burden of proof to the de-

---

1. I do not suggest that I approve of the type of questions asked or that I am persuaded that they were asked merely to test the witness' recollection.

fendant, *see, e. g., Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), or where the concept of reasonable doubt was improperly defined, *see, e. g., Dunn v. Perrin,* 570 F.2d 21 (1st Cir. 1978). Petitioners here carry a heavy burden to establish that omissions or misleading statements relating to credibility alone deprived them of a fair trial. *See Grieco v. Meachum,* 533 F.2d at 720–1.

 Each of petitioners' assertions of error standing alone do not reach constitutional magnitude. The judge's concededly correct statement that the wisdom of Lincoln's plea bargain was not evidence did not withdraw the existence of the bargain from evidence. This is not a case where a secret deal between a witness and the government was not disclosed to the jury, as in *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). *See United States v. Ramos Algarin,* 584 F.2d 562 (1st Cir. 1978). Defense counsel fully explored Lincoln's possible motives on cross-examination, and the judge supplemented his general credibility instructions with an instruction that a witness' "personal interest" should be a factor in the jury's consideration. In addition, the judge told the jury that Lincoln was charged as a conspirator, and so regarded by the Commonwealth. Under these circumstances, the jury had sufficient information by which to measure Lincoln's credibility.

 The judge's failure to give a "close scrutiny" instruction based upon Lincoln's status as an accomplice similarly did not constitute a denial of due process. While such an instruction may be prudent, *see United States v. House,* 471 F.2d 886, 888 (1st Cir. 1973), it is not constitutionally required. *United States v. Wright,* 573 F.2d 681, 685 (1st Cir.), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2857, 56 L.Ed.2d 792 (1978); *Grieco v. Meachum,* 533 F.2d at 721.

In *McMillen v. United States,* 386 F.2d 29 (1st Cir. 1967), *cert. denied,* 390 U.S. 1031, 88 S.Ct. 1424, 20 L.Ed.2d 288 (1968), the First Circuit held that a failure to give a cautionary instruction as to the testimony of accomplice witnesses, when combined with a "presumption of truthfulness" instruction as to all witnesses justified reversal of the federal conviction. Although no "presumption of truthfulness" charge was given here, petitioners argue that the synergistic effect of the alleged errors in the charge similarly requires reversal. It is important to note, however, that petitioners do not allege that the judge incorrectly stated the law in any instruction. In addition, in the present case, in contrast to *McMillen,* there was other documentary and testimonial evidence to support the convictions. After a thorough review of the entire instructions, I find that the charge did not mislead or confuse the jury. *United States v. DeVincent,* 546 F.2d 452 (1st Cir. 1976); *Grieco v. Meachum, supra.*

Accordingly, respondent's motion to dismiss is ALLOWED.